# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| NINGDE AMPEREX TECHNOLOGY LIMITED, | § § § | |
| Plaintiff, | § § | **Civil Action No.: 2:22-CV-232** |
| v. | § § | **JURY TRIAL DEMANDED** |
| ZHUHAI COSMX BATTERY CO., LTD., | § § | |
| Defendant. | | |

## NINGDE AMPEREX TECHNOLOGY LTD.'S MOTION TO DISMISS ZHUHAI COSMX BATTERY CO., LTD.'S COUNTERCLAIM COUNTS NINE TO THIRTEEN

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   STATEMENT OF ISSUES TO BE DECIDED BY THE COURT ....................................2

III.  BACKGROUND ..................................................................................................3

    A.    The Counterclaims Center on Chinese Companies Discussing Issues in
China About China-Related Issues ..........................................................3

    B.    CosMX Alleges That ATL's Patent Assertions and Other Complaints
About CosMX's Business Practices Constitute Anticompetitive Acts...................3

    C.    CosMX Alleges Three Allegedly Affected Relevant Markets ................................5

    D.    CosMX Brings a Variety of Federal and State Law Counterclaims......................6

IV.   MOTION TO DISMISS LEGAL STANDARD ..................................................................6

V.    ARGUMENT ..................................................................................................7

    A.    The Antitrust Counterclaims (Counts Nine and Ten) Fail For a Number of
Independent Reasons ..................................................................................7

        1.    The Foreign Trade Antitrust Improvement Act (FTAIA)
Disqualifies Counterclaim Counts Nine and Ten For Lack of
Subject Matter Jurisdiction ................................................................7

            (a)    The alleged Innovation-Labor-Market-related conduct does
not affect American commerce ........................................................8

            (b)    The parties' extraterritorial interactions similarly do not
satisfy the FTAIA's jurisdictional requirements.............................9

            (c)    None of ATL's patent infringement lawsuits satisfy the
FTAIA's jurisdictional requirements either.................................10

        2.    The *Noerr-Pennington* Doctrine Bars CosMX's Attempted
Monopolization Claim (Count Nine)...............................................12

        3.    CosMX Fails to State a Claim For a Conspiracy to Monopolize
(Count Ten)..................................................................................13

        4.    CosMX, An Employer, Lacks Antitrust Standing For a Supposedly
Unconsummated "No-Poach" Conspiracy (Count Ten)...........................15

    B.    The State Law Counterclaims (Counts Eleven to Thirteen) Should be
Dismissed Due to the Litigation Privilege and Failure to State a Legally
Recognized Claim ..................................................................................17

        1.    California Law Applies to CosMX's Unfair Competition and
Attempted Extortion Counterclaims Based on California Statutes............17

        2.    California's Litigation Privilege Bars Unfair Competition and
Extortion Claims Based On Pre-Litigation Communications....................18

        3.    Texas Does Not Recognize Attempted Extortion As a Cause of
Action........................................................................................21

VI.    CONCLUSION.............................................................................................................21

# TABLE OF AUTHORITIES

Page(s)

CASES

*Abraham & Veneklasen Joint Venture v. Am. Quarter Horse Ass'n,*
    776 F.3d 321 (5th Cir. 2015) ............................................................ 14

*Action Apartment Assn., Inc. v. City of Santa Monica,*
    41 Cal. 4th 1232 (2007) .................................................................... 18

*Anago, Inc. v. Tecnol Med. Prod., Inc.,*
    976 F.2d 248 (5th Cir. 1992) ............................................................ 16

*Animal Sci. Prod., Inc. v. China Minmetals Corp.,*
    654 F.3d 462 (3d Cir. 2011) ............................................................... 9

*Apani Sw., Inc. v. Coca-Cola Enterprises, Inc.,*
    300 F.3d 620 (5th Cir. 2002) .............................................................. 8

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..................................................................... 6, 15

*Associated Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters,*
    459 U.S. 519 (1983)........................................................................ 15

*Bayou Fleet, Inc. v. Alexander,*
    234 F.3d 852 (5th Cir. 2000) ............................................................ 12

*B-K Lighting, Inc. v. Vision3 Lighting,*
    2008 WL 11286080 (C.D. Cal. May 23, 2008) ................................. 19

*Bowlby v. City of Aberdeen,*
    681 F.3d 215 (5th Cir. 2012) .............................................................. 6

*BRFHH Shreveport, LLC v. Willis Knighton Med. Ctr.,*
    176 F. Supp. 3d 606 (W.D. La. 2016)............................................... 15

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
    429 U.S. 477 (1977)........................................................................ 15

*Bryant v. Mil. Dep't of Mississippi,*
    597 F.3d 678 (5th Cir. 2010) ....................................................... 12, 13

*C.R. Bard, Inc. v. M3 Sys., Inc.,*
    157 F.3d 1340 (Fed. Cir. 1998)........................................................ 13

*Clark v. Amoco Prod. Co.,*
    794 F.2d 967 (5th Cir. 1986) ............................................................ 12

*Corr Wireless Commc'ns, LLC v. AT & T, Inc.,*
    893 F. Supp. 2d 789 (N.D. Miss. 2012).............................................. 14

*Cunningham v. Politi,*
    2019 WL 2517085 (E.D. Tex. Apr. 30, 2019), *report and recommendation adopted,*
    2019 WL 2524737 (E.D. Tex. June 19, 2019)...................................... 21

*Den Norske Stats Oljeselskap As v. HeereMac Vof,*
    241 F.3d 420 (5th Cir. 2001) .......................................................... 7, 8

*Dimmitt Agri Indus., Inc. v. CPC Int'l Inc.,*
    679 F.2d 516 (5th Cir. 1982) ............................................................ 11

*DTEX, LLC v. BBVA Bancomer, S.A.,*
    508 F.3d 785 (5th Cir. 2007) ............................................................ 17

*F. Hoffman-La Roche Ltd. v. Empagran S.A.,*
    542 U.S. 155 (2004)...................................................................... 8, 9

*Fina, Inc. v. ARCO*,
  200 F.3d 266 (5th Cir. 2000) ......................................................................... 17

*Fisher Tooling Co. v. Gillet Outilliage*,
  2005 WL 8165667 (C.D. Cal. Mar. 28, 2005) ................................................. 19

*Fleming v. Coverstone*,
  2009 WL 764887 (S.D. Cal. Mar. 18, 2009) .................................................. 20

*Flickinger v. Finwall*,
  2022 WL 17333402 (Cal. Ct. App. Nov. 30, 2022) ......................................... 19

*Gonzalez v. Kay*,
  577 F.3d 600 (5th Cir. 2009) ........................................................................... 6

*Gutierrez v. Collins*,
  583 S.W.2d 312 (Tex. 1979) ........................................................................... 17

*In re Beef Industry Antitrust Litig.*,
  600 F.2d 1148 (5th Cir. 1979) ......................................................................... 9

*In re Capacitors Antitrust Litig.*,
  No. 14-CV-03264-JD, 2018 WL 4558265 (N.D. Cal. Sept. 20, 2018) ............. 11

*In re Intel Corp. Microprocessor Antitrust Litig.*,
  476 F. Supp. 2d 452 (D. Del. 2007) ............................................................... 10

*Jackson v. Storts*,
  2021 WL 342992 (Tex. App. Feb. 2, 2021) ..................................................... 21

*Le v. Zuffa, LLC*,
  216 F. Supp. 3d 1154 (D. Nev. 2016) .......................................................... 9, 16

*Lee v. Lee*,
  2021 WL 4459762 (C.D. Cal. May 13, 2021) ................................................. 20

*Lone Star Fund v. (U.S.), L.P. v. Barclays Bank PLC*,
  594 F.3d 383 (5th Cir. 2010) ........................................................................... 6

*Malin v. Singer*,
  217 Cal. App. 4th 1283 (Cal. Ct. App. July 16, 2013) ................................... 19

*Miller v. BAC Home Loans Servicing, L.P.*,
  726 F.3d 717 (5th Cir. 2013) ......................................................................... 12

*Natkin v. Am. Osteopathic Ass'n*,
  2018 WL 452165 (D. Or. Jan. 17, 2018) ....................................................... 15

*Norris v. Hearst Trust*,
  500 F.3d 454 (5 Cir. 2007) ............................................................................. 16

*Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*,
  508 U.S. 49 (1993) ......................................................................................... 12

*Rubin v. Green*,
  4 Cal. 4th 1187 (1993) ............................................................................... 18, 19

*Sanger Ins. Agency v. HUB Int'l, Ltd.*,
  802 F.3d 732 (5th Cir. 2015) ......................................................................... 15

*Sanitec Indus. Inc. v. Micro-Waste Corp.*,
  2005 WL 8168876 (S.D. Tex. June 15, 2005) ................................................ 13

*Silberg v. Anderson*,
  50 Cal. 3d 205 (1990) ..................................................................................... 18

*Skidmore Energy, Inc. v. KPMG LLP*,
  No. CIV.A.3:03CV2138-B, 2004 WL 3019097 (N.D. Tex. Dec. 28, 2004) .... 10, 11

*Source Network Sales & Mktg., LLC v. Ningbo Desa Elec. Mfg. Co.*,
  2015 WL 2341063 (N.D. Tex. May 15, 2015) ................................................ 12

*St. Paul Mercury Ins. Co. v. Lexington Ins. Co.*,
   78 F.3d 202 (5th Cir. 1996) .......................................................................... 17
*Stewart Glass & Mirror, Inc. v. U.S. Auto Glass Discount Centers, Inc.*,
   200 F.3d 307 (5th Cir. 2000) ........................................................................ 14
*Torrington Co. v. Stutzman*,
   46 S.W.3d 829 (Tex. 2000) ........................................................................... 17
*TravelPass Grp., LLC v. Caesars Ent. Corp.*,
   2019 WL 5691996 (E.D. Tex. Aug. 29, 2019), *report and recommendation adopted*,
   2019 WL 4727425 (E.D. Tex. Sept. 27, 2019) .................................... 6, 15
*Turicentro, S.A. v. Am. Airlines Inc.*,
   303 F.3d 293 (3d Cir. 2002) ............................................................................ 9
*United States v. Ganji*,
   880 F.3d 760 (5th Cir. 2018) ........................................................................ 14
*United States v. LSL Biotechnologies*,
   379 F.3d 672 (9th Cir. 2004) ........................................................................ 10
*Wampler v. Sw. Bell Tel. Co.*,
   597 F.3d 741 (5th Cir. 2010) ........................................................................ 11
*Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*,
   549 U.S. 312 (2007) ......................................................................................... 9
*White Mule Co. v. ATC Leasing Co. LLC*,
   540 F. Supp. 2d 869 (N.D. Ohio 2008) ....................................................... 16
*Xitronix Corp. v. KLA-Tencor Corp.*,
   916 F.3d 429 (5th Cir. 2019) ........................................................................ 12

## STATUTORY AUTHORITIES
15 U.S.C. § 2 ......................................................................................................... 11
15 U.S.C. § 6a ................................................................................................... 7, 11
Cal. Bus. & Prof. Code § 17200 ......................................................................... 6
Cal. Civ. Code § 47(b) ........................................................................... 18, 19, 20
Cal. Penal Code § 9 ............................................................................................ 17
Cal. Penal Code § 524 ........................................................................................ 17
Tex. Civ. Prac. & Rem. Code § 134 .................................................................. 21

## RULES AND REGULATIONS
Fed. R. Civ. P. 8(a)(2) .......................................................................................... 6

## ADDITIONAL AUTHORITIES
Restatement (Second) of Conflict of Laws § 6 ............................................... 17
Restatement (Second) of Conflict of Laws § 6(2) .......................................... 17
Restatement (Second) of Conflict of Laws § 145 ........................................... 17
Restatement (Second) of Conflict of Laws § 145(2) ...................................... 17

## I.    INTRODUCTION

As the Court was informed from the parties' pending motion to transfer, this is a patent infringement case involving lithium-ion battery cell products. Dkt. 15. Plaintiff Ningde Amperex Technology Limited ("ATL") and Defendant Zhuhai CosMX Battery Co., Ltd. ("CosMX") are Chinese companies that manufacture and distribute lithium-ion battery ("LIB") cells in China that are used as components in battery packs that are themselves used as cordless power supplies in various consumer electronics, including laptops and smartphones. To be clear, these LIB cells are not sold directly to consumers because they present safety concerns if not handled properly. LIB cells need to be packaged into battery packs—housings configured to fit the intended consumer electronic device and which contain at least a battery management system (usually a semiconductor-based controller and circuit board) and a connection system—before being incorporated into an electronic device. As alleged by CosMX itself, ATL and CosMX only make and supply LIB cells to battery pack manufacturers outside the United States, who in turn sell/deliver battery packs to suppliers/assemblers outside the United States that may then sell/deliver them to the manufacturer of an end-user device such as smartphone or a laptop. While **LIB cells** would never be shipped direct to consumers given the safety risk, manufacturers of end-user electronics devices—not ATL or CosMX—may provide for direct sale of **battery packs** to end users as replacements for battery packs that no longer function properly. CosMX does not allege that this case is about any battery pack-related market.

Despite neither ATL nor CosMX directly selling, importing, or distributing products to consumers in the United States, CosMX alleges ATL is liable under § 2 of the Sherman Act (Counterclaim Counts Nine and Ten) because it asked CosMX in meetings occurring entirely in China to take a license for the asserted patents and pay an appropriate license fee, and

complained to CosMX about how many ATL employees it had hired away. Moreover, even though none of this allegedly wrongful conduct occurred in California or Texas, CosMX further alleges ATL is liable for unfair competition under California law and civil attempted extortion under both California and Texas law (Counterclaim Counts Eleven through Thirteen). Antitrust Counts Nine and Ten fail for a variety of reasons, including: CosMX fails to plead (and cannot plead) any facts that could support a finding of harm to any import business to the United States or to any person in the United States, thereby depriving the Court of subject matter jurisdiction over those counts in view of the Foreign Trade Antitrust Improvement Act ("FTAIA"); CosMX's allegations make clear that the *Noerr-Pennington* doctrine immunizes ATL from antitrust liability for its allegedly improper patent enforcement activities under Count Nine; and CosMX fails to allege a conspiracy to monopolize under Count Ten because it alleges the parties never reached an *agreement* (which is required for a conspiracy), and it fails to explain how it, as an employer, could possibly have suffered antitrust injury from an alleged "no-poach" conspiracy (*i.e.*, a conspiracy affecting workers). As for Counterclaim Counts Eleven, Twelve, and Thirteen, those fail because they either rely on absolutely privileged communications, or attempt to state a claim (attempted extortion) not recognized by law.

## II.    STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

1.    Whether the Court lacks subject matter jurisdiction over Counterclaim Counts Nine and Ten in view of the FTAIA?

2.    Whether the *Noerr-Pennington* doctrine bars Counterclaim Count Nine, CosMX's attempted monopolization claim?

3.    Whether CosMX has adequately pled any claim for relief under Counterclaim Counts Nine Through Thirteen?

III.    BACKGROUND

A.    The Counterclaims Center on Chinese Companies Discussing Issues in China About China-Related Issues

Both CosMX and ATL are based in China. Dkt. 41 ("First Amended Answer" or "FAA") ¶ 7; *id.* ("Amended Counterclaims") ¶¶ 1-2. According to the FAA, LIB manufacturers sell battery cells to battery pack manufacturers, who in turn sell completed battery packs to electronics manufacturers and/or consumers. *See* FAA ¶¶ 11, 35, 49, 63, 77. Notably, CosMX nowhere alleges that it has any employees in the U.S., nor seeks in regular course to employ U.S. residents, *see generally* Amended Counterclaims, and it admits that it is listed on the Shanghai Stock Exchange—because it operates in China. *See id.* ¶ 10.

CosMX alleges that the parties' interactions began in June 2021, when ATL sent CosMX a letter claiming patent infringement based on Chinese patents. *Id.* ¶ 12. ATL then sent another letter a few days later regarding U.S. patents, *id.* ¶ 13, and the parties then engaged in a series of meetings and conferences to discuss these issues from July to September 2021. *Id.* ¶ 14. During those conversations (which occurred in China), CosMX alleges that it explained why it did not believe it infringes ATL's patents, as well as its views that the patents are invalid. *Id.* Nowhere in the Amended Counterclaims does CosMX allege that ATL was ever without a good faith basis in these conversations to assert the patents against it. *See generally id.*

B.    CosMX Alleges That ATL's Patent Assertions and Other Complaints About CosMX's Business Practices Constitute Anticompetitive Acts

In the Amended Counterclaims, CosMX alleges that ATL violated the Sherman Act by engaging in two primary forms of anticompetitive acts: (1) sham litigation based on asserting

infringement over its Chinese and U.S. patents (whether by letter or by lawsuit); and (2) attempting to solicit a "no-poach" agreement with CosMX. *Id.* ¶¶ 78-91.[1]

In support of its "sham" allegations, CosMX offers no allegation that ATL is without a good faith basis to assert patent infringement against CosMX. Instead, CosMX repeatedly concedes that its "claim does not depend or turn on whether ATL's patents are valid or not, or have been infringed or not." *Id.* ¶¶ 37, 81. Notably, throughout the Amended Counterclaims, CosMX cites various prior art references that allegedly invalidate the asserted patents, but does not allege that ATL knew of these references before filing this action, nor withheld them from the respective patent offices in China and the U.S. before securing its patents. *Id.* ¶¶ 49, 58, 67, 76. CosMX also asserts that it does not infringe the asserted patents because "CosMX's products" do not meet an element of each asserted patent claim—but does not show how a party could not reasonably believe based on its own due diligence that the accused CosMX battery cell meets the asserted patent claims. *See id.* ¶¶ 44, 53, 62, 71.

As for the alleged "no-poach" agreement, CosMX alleges that during the parties' negotiations ATL complained about CosMX hiring away its employees and wanted CosMX to agree not to hire ATL employees as part of resolving ATL's patent claims against CosMX. *Id.* ¶¶ 17-18. CosMX alleges—without any explanation—that despite being limited to ATL employees, ATL's proposal would have harmed competition in the labor market for all individuals with "specialized technical knowledge and expertise" to produce innovations in the market for lithium-ion batteries (the "Innovation Labor Market"). *See id.* ¶¶ 27-28, 31. However,

---

[1]  ATL strongly contests CosMX's representation of facts—including allegations that ATL proposed a "no-poach" agreement—and stand ready to refute them at the appropriate time if CosMX's antitrust and state law claims are not dismissed. For the purposes of this motion, ATL treats the well-pled factual allegations in the Amended Counterclaims as true.

even if CosMX's allegations about the no-poach agreement are assumed true for the purposes of this motion—and they are not—CosMX also alleges that it refused to reach any sort of agreement with ATL regarding employment practices, and it does not allege that ATL's proposal affected the individuals or companies that are part of the Innovation Labor Market or any of the other markets it discusses in its Amended Counterclaims. *See id.* ¶¶ 18, 20.

### C.    CosMX Alleges Three Allegedly Affected Relevant Markets

In connection with its antitrust counterclaims, CosMX alleges three separate relevant markets. The first, as noted above, is the so-called Innovation Labor Market, which is for employees that ATL and CosMX—both Chinese companies—employ. In addition to the labor market, CosMX also alleges that ATL's actions affect the markets for sales of lithium-ion battery cells used in smartphones and laptops (respectively, the "Smartphone Battery Market" and "Laptop Battery Market"). *Id.* ¶¶ 78-91. While CosMX alleges that (i) the Smartphone Battery Market and Laptop Battery Market are "world-wide" and (ii) the Innovation Labor Market is either "world-wide" or "coterminous with the nation of China," it does not allege that the parties hire individuals in the U.S. who are part of the Innovation Labor Market, nor does it allege that the parties sell or deliver their lithium-ion battery cells to any parties in the U.S. *See id.* ¶¶ 24, 29.

Despite these allegations, CosMX does not actually explain how competition has been or will be impacted by ATL's statements to CosMX and/or its infringement contentions/lawsuits in China and the U.S. In fact, according to CosMX, the only entity specifically injured by ATL's alleged actions is CosMX itself—because it "has incurred costs and legal fees responding to ATL's allegations prior to and in conjunction with the filing of this lawsuit and related proceedings around the world." *Id.* ¶ 84.

### D.    CosMX Brings a Variety of Federal and State Law Counterclaims

On the basis of the above allegations, CosMX brings the five Counterclaim Counts at issue on this motion: Counterclaim Counts Nine and Ten, which assert attempted monopolization and conspiracy to monopolize claims under Section 2 of the Sherman Act; Count Eleven, which asserts an unfair competition claims under Cal. Bus. & Prof. Code § 17200, based on ATL's supposed antitrust violations; and Counts Twelve and Thirteen, which respectively assert attempted extortion claims under Texas and California state law. *Id.* ¶¶ 78-105.

## IV.    MOTION TO DISMISS LEGAL STANDARD

When considering a motion to dismiss under Rule 12(b)(6), the court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund v. (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. *TravelPass Grp., LLC v. Caesars Ent. Corp.*, 2019 WL 5691996, at *7 (E.D. Tex. Aug. 29, 2019), *report and recommendation adopted*, 2019 WL 4727425 (E.D. Tex. Sept. 27, 2019).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## V.    ARGUMENT

### A.    The Antitrust Counterclaims (Counts Nine and Ten) Fail For a Number of Independent Reasons

Antitrust claims under the Sherman Act have a number of exacting and demanding requirements, and Counterclaim Counts Nine and Ten fail to establish several independent requirements under the law. The first reason, which applies to both counts, is that they do not establish subject matter jurisdiction under the FTAIA because the claims deal with foreign parties engaged in foreign activities affecting foreign markets with no direct connection to the U.S. This alone requires dismissal of both Counts. But, even if that were not so, Count Nine's "sham litigation" assertion fails because CosMX's own complaint makes clear that it cannot (and does not intend to) satisfy the critical first step of a sham litigation claim; *i.e.*, establish that the supposed "sham" claims were "objectively baseless." Count Ten, which focuses on a supposed "no-poach" conspiracy to monopolize, fares no better because such claim requires an *agreement* and CosMX alleges the parties never reached an agreement. It also fails because a "no-poach" conspiracy—otherwise known as a monopsonization conspiracy—requires the plaintiff to either show they were an affected worker or were precluded as a rival competitor from obtaining workers due to the defendant's conduct. CosMX alleges neither, and thus cannot establish antitrust standing.

### 1.    The Foreign Trade Antitrust Improvement Act (FTAIA) Disqualifies Counterclaim Counts Nine and Ten For Lack of Subject Matter Jurisdiction[2]

CosMX's Sherman Act Counterclaim Counts rely entirely on non-import activity in China.  The FTAIA, 15 U.S.C. § 6a, "lays down a general rule placing all (nonimport) activity

---

[2]  Pursuant to *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001)), ATL's FTAIA arguments below may also be analyzed under Rule 12(b)(1). Applying that Rule, however, does not change the correct resolution of this motion, as one of the bases for

involving foreign commerce **outside** the Sherman Act's reach." *F. Hoffman-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 162 (2004) (emphasis added). Only one exception exists to this general rule: the foreign activity must "(1) sufficiently affect[] American commerce, *i.e.*, it has a 'direct, substantial, and reasonably foreseeable effect' on American domestic, import, or (certain) export commerce, and (2) has an effect of a kind that antitrust law considers harmful, *i.e.*, the 'effect' must 'giv[e] rise to a [Sherman Act] claim.'" *Id.*; *see Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 426 (5th Cir. 2001) ("[T]he FTAIA states that the antitrust laws will not apply to non-import foreign conduct unless (1) such conduct has a direct, substantial, and reasonably foreseeable effect on United States domestic commerce, and (2) such effect gives rise to the antitrust claim."). The FAA fails to adequately plead either prong of the exception.

> **(a)    The alleged Innovation-Labor-Market-related conduct does not affect American commerce**

The Sherman Act counterclaims based on the Innovation Labor Market allegations fail as a matter of law under the FTAIA because CosMX has failed to allege any effect on commerce in the United States. The proper term for anticompetitive labor market manipulation is "monopsonization," not monopolization. That concept addresses situations where a dominant purchaser of a product or service (here, labor services) acts in a way to anticompetitively lower prices for that product/service or to deprive its competitors of adequate supply. *See Apani Sw., Inc. v. Coca-Cola Enterprises, Inc.*, 300 F.3d 620, 629 n.5 (5th Cir. 2002) ("Monopsony refers to

---

determining jurisdiction under Rule 12(b)(1) is to look at the complaint itself. *Id.* at 424 ("In ruling on a [Rule 12(b)(1)] motion to dismiss for lack of subject matter jurisdiction, a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."). In doing so, the court "must accept all factual allegations in the plaintiff's complaint as true." *Id.*

price fixing or monopolization by a single buyer.") (citing *In re Beef Industry Antitrust Litig.*, 600 F.2d 1148 (5th Cir. 1979)); *see also Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*, 549 U.S. 312, 320 (2007) ("Monopsony power is market power on the buy side of the market."). The location relevant employees—otherwise known as the "geographic relevant market"—is key to understanding the scope of the claim. *See*, *e.g.*, *Le v. Zuffa, LLC*, 216 F. Supp. 3d 1154, 1159 (D. Nev. 2016) (addressing claims that the UFC monopsonized "the market for live Elite Professional MMA Fighter services" in the U.S. or, in the alternative, North America).

In the FAA, CosMX concedes that both it and ATL are based in China. First Amended Answer ¶¶ 2, 7. CosMX identifies no impacted U.S. commerce at all; *e.g.*, no U.S. workers, no U.S. employers, and no effects on U.S. wages or labor suppliers. *See generally* Amended Counterclaim. Neither party alleges that they employ individuals in the U.S. With a labor market based outside the U.S., the Innovation Labor Market portions of CosMX's counterclaims have no "'direct, substantial, and reasonably foreseeable effect' on American domestic, import, or (certain) export commerce." *F. Hoffman-La Roche Ltd.*, 542 U.S. at 162; *see also Turicentro, S.A. v. Am. Airlines Inc.*, 303 F.3d 293, 297 (3d Cir. 2002), *overruled in part on other grounds by Animal Sci. Prod., Inc. v. China Minmetals Corp.*, 654 F.3d 462 (3d Cir. 2011) (finding that FTAIA barred lawsuit against airlines accused of anticompetitively reducing commissions for foreign travel agents, because those agents operated in foreign markets).

### (b)   The parties' extraterritorial interactions similarly do not satisfy the FTAIA's jurisdictional requirements

Next, with the exception of this lawsuit itself (addressed in Section IV.A.2. below), CosMX does not allege any supposedly anticompetitive conduct occurring outside the U.S. that directly impacted the U.S. For example, although it alleges various pre-suit communications and

Chinese patent infringement lawsuits, it does not explain how any of those communications affected import commerce. Nor does CosMX allege that those communications directly affected any parties in the U.S., which makes sense since CosMX admits that it is based overseas, its purchasers are overseas, and its sales occur overseas, as do its deliveries. *See* FAA ¶¶ 11, 35, 49, 63, 77. In short, CosMX simply alleges these communications happened, but it did not—and cannot—explain how such communications actually directly and foreseeably impacted U.S. commerce. Accordingly, these overseas communications and lawsuits cannot meet the FTAIA's initial requirement. *See*, *e.g.*, *United States v. LSL Biotechnologies*, 379 F.3d 672, 681-83 (9th Cir. 2004) (holding that FTAIA bars Sherman Act claim because alleged agreement to ban sale of modified tomato seeds in Mexico did not have direct effect on U.S. commerce); *Skidmore Energy, Inc. v. KPMG LLP*, No. CIV.A.3:03CV2138-B, 2004 WL 3019097, at *8 (N.D. Tex. Dec. 28, 2004) (granting motion to dismiss Sherman Act claims under FTAIA because plaintiffs only alleged foreign injury and failed to allege domestic injury or effect); *In re Intel Corp. Microprocessor Antitrust Litig.*, 476 F. Supp. 2d 452, 454-56 (D. Del. 2007) (FTAIA barred claims alleging defendants' foreign conduct resulting in higher prices for microprocessors sold abroad and installed in computers later sold within the U.S. because "this speculative chain of events is insufficient to create the direct, substantial and foreseeable effects on commerce required by the FTAIA").

### (c) None of ATL's patent infringement lawsuits satisfy the FTAIA's jurisdictional requirements either

The final reason the FTAIA precludes jurisdiction for CosMX's antitrust counterclaims—even with respect to allegations that ATL's U.S. patent infringement lawsuit is an anticompetitive act—is that CosMX does not plausibly allege any affected U.S. markets. Neither party operates in the U.S.; neither sells products in the U.S.; and neither sells nor delivers

products to parties located in the U.S. Furthermore, the antitrust counterclaims do not identify any other competitors allegedly affected by ATL's "scheme" that operate or sell in the U.S., nor any customers that purchase allegedly affected products in the U.S. Accordingly, contrary to Section 2's and the FTAIA's express requirements, CosMX does not plausibly allege any affected "part of the trade or commerce among the several States, or with foreign nations." 15 U.S.C. §§ 2, 6a.

The only allegation CosMX makes that arguably addresses this point is its conclusory assertion that the relevant geographic markets in this case are "world-wide." Amended Counterclaims ¶ 24. However, a relevant geographic market—for which a Section 2 plaintiff bears the burden to establish, *see Dimmitt Agri Indus., Inc. v. CPC Int'l Inc.*, 679 F.2d 516, 525 (5th Cir. 1982)—is the area "in which the seller operates and to which buyers can practicably turn for supplies." *Wampler v. Sw. Bell Tel. Co.*, 597 F.3d 741, 744 (5th Cir. 2010). Here, CosMX's own allegations make clear that the only locations to directly purchase laptop and smartphone battery cells are in Asia. *See supra*. This means that CosMX's own allegations establish that the only affected commerce here is foreign, meaning this Court has no jurisdiction over its Sherman Act claims. *In re Capacitors Antitrust Litig.*, No. 14-CV-03264-JD, 2018 WL 4558265, at *6-7 (N.D. Cal. Sept. 20, 2018) (holding that FTAIA precluded antitrust claim based on goods sold and shipped by a foreign defendant to a foreign entity and incorporated into finished goods sold outside the U.S.); *see Skidmore*, 2004 WL 3019097, at *8. Thus, even ATL's patent infringement lawsuit is insufficient to establish jurisdiction on the idea that it is a supposedly anticompetitive act.

11

### 2.    The *Noerr-Pennington* Doctrine Bars CosMX's Attempted Monopolization Claim (Count Nine)

The *Noerr-Pennington* doctrine is an affirmative defense. *Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 860 (5th Cir. 2000). The doctrine "authorizes dismissal through a Rule 12(b)(6) motion only when its applicability appears on the face of the pleadings." *Source Network Sales & Mktg., LLC v. Ningbo Desa Elec. Mfg. Co.*, 2015 WL 2341063, at *11 (N.D. Tex. May 15, 2015) (citation, internal quotation marks, and ellipsis omitted); *see also Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 726 (5th Cir. 2013) ("[W]hen a successful affirmative defense appears on the face of the pleadings, dismissal under Rule 12(b)(6) may be appropriate.") (citation and internal quotation marks omitted); *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986) ("a claim may . . . be dismissed if a successful affirmative defense appears clearly on the face of the pleadings").

The *Noerr-Pennington* doctrine (so named for a pair of Supreme Court cases first articulating the doctrine) immunizes a lawsuit from antitrust liability except in two very narrow, well-defined circumstances. The first is known as the *Walker Process* fraud exception, which potentially attaches liability to asserting a fraudulently-obtained patent in order to harm competition. *Xitronix Corp. v. KLA-Tencor Corp.*, 916 F.3d 429, 432 (5th Cir. 2019). CosMX does not allege *Walker Process* fraud here. The second exception, known as the sham litigation exception, does not apply here. *Bryant v. Mil. Dep't of Mississippi*, 597 F.3d 678, 690 (5th Cir. 2010) (discussing *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993) ("*PRE*")).

"The Supreme Court enunciated a two-part test for sham litigation: (1) the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits, and (2) only if the challenged litigation is objectively meritless may a court

examine the litigant's subjective motivation to determine whether the baseless lawsuit conceals an attempt to interfere directly with the business relationships of a competitor, through the use [of] the governmental process as opposed to the outcome." *Bryant*, 597 F.3d at 690. However, "[t]he law recognizes a presumption that the assertion of a duly granted patent is made in good faith[.]" *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1369 (Fed. Cir. 1998). Notably, if the plaintiff cannot establish objective baselessness, then any sham litigation assertion fails as a matter of law. *PRE*, 508 U.S. at 60-61. CosMX has failed to plead both prongs.

To maintain Counterclaim Count Nine, CosMX must allege that ATL's patent assertions are "objectively baseless." But CosMX never accuses ATL of objectively baseless actions. Instead, CosMX attempts to side-step this requirement in Paragraphs 37 and 81 of the Amended Counterclaims and merely states that "CosMX's claim does not depend or turn on whether ATL's patents are valid or not, or have been infringed or not." In paragraph 82, CosMX alleges in the alternative that the patents-in-suit are either invalid or that CosMX does not infringe them. But disputing validity or infringement does not amount to a claim that ATL's patent infringement assertions were objectively baseless. *See, e.g.*, *Sanitec Indus. Inc. v. Micro-Waste Corp.*, 2005 WL 8168876, at *5 (S.D. Tex. June 15, 2005) (dismissing antitrust counterclaim that did not allege patentee-antitrust defendant knew of any allegedly invalidating prior art).

Accordingly, CosMX pled itself out of court because it cannot and does not intend to meet the necessary first prong of a sham litigation antitrust claim; *Noerr-Pennington* therefore disposes of ATL's patents claims. *See PRE*, 508 U.S. at 60-61.

### 3. CosMX Fails to State a Claim For a Conspiracy to Monopolize (Count Ten)

CosMX's next major failure in its Amended Counterclaims is the assertion in Count Ten that ATL is liable under the Sherman Act for "solicitation to participate in a conspiracy to jointly

monopolize the market for highly skilled, technologically advanced labor services in the business of inventing and manufacturing lithium-ion battery cells." Amended Counterclaims ¶ 87. These allegations fail for two independent reasons.

"Section 2 of the Sherman Antitrust Act provides a cause of action against … conspiracies and combinations to monopolize.'" *Stewart Glass & Mirror, Inc. v. U.S. Auto Glass Discount Centers, Inc.*, 200 F.3d 307, 315 (5th Cir. 2000) (internal citation omitted). But Section 2 does not provide a cause of action for a "solicitation" (*i.e.*, an attempt) to participate in a conspiracy to monopolize. *Cf. Corr Wireless Commc'ns, LLC v. AT & T, Inc.*, 893 F. Supp. 2d 789, 810 (N.D. Miss. 2012) (dismissing, *inter alia*, conspiracy to monopolize claim because "Plaintiffs have failed to plead plausible facts of any agreement or conspiracy, anticompetitive or otherwise, between the Defendants").

To the extent that CosMX intended to plead a conspiracy to monopolize, *per se* illegal claims (*e.g.*, price fixing, bid rigging, market allocation)—or, really, any conspiracy claims— only exist where the parties reach an actual agreement. *See Abraham & Veneklasen Joint Venture v. Am. Quarter Horse Ass'n*, 776 F.3d 321, 327 (5th Cir. 2015) (noting that conspiracy-based antitrust claims require an agreement between two different entities); *see also United States v. Ganji*, 880 F.3d 760, 768 (5th Cir. 2018) ("[T]he crime of conspiracy condemns the agreement itself . . . . [T]he agreement itself is the criminal act. Without an agreement, there is no conspiracy.") (internal citation omitted). CosMX alleges the opposite; *i.e.*, that it refused to enter into an agreement. *See* Amended Counterclaims ¶¶ 18, 20, 39, 89. Without an agreement, CosMX thus does not state a claim for conspiracy under either Section 1 or 2 of the Sherman Act, dooming its counterclaims based on the Innovation Labor Market-related allegations.

14

### 4.    CosMX, An Employer, Lacks Antitrust Standing For a Supposedly Unconsummated "No-Poach" Conspiracy (Count Ten)

Count Ten should also be dismissed for lack of antitrust standing.  An antitrust plaintiff must show both constitutional standing and "antitrust standing." "Antitrust standing" is a "judicially-created set of threshold requirements that a private plaintiff must show before a court can entertain its antitrust claims." *BRFHH Shreveport, LLC v. Willis Knighton Med. Ctr.*, 176 F. Supp. 3d 606, 626 (W.D. La. 2016) (citing *Associated Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters,* 459 U.S. 519, 535 n. 31 (1983)). In the Fifth Circuit, "antitrust standing" requires "1) injury-in-fact, [i.e.,] an injury to the plaintiff proximately caused by the defendants' conduct; 2) antitrust injury; and 3) proper plaintiff status, which assures that other parties are not better situated to bring suit." *BRFHH Shreveport*, 176 F. Supp. 3d at 626 (quoting *Sanger Ins. Agency v. HUB Int'l, Ltd.*, 802 F.3d 732, 737 (5th Cir. 2015)). "Antitrust injury" is "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful"; *i.e.*, injury that reflects the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation. *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).

Although antitrust standing often presents questions of fact, "[c]ircumstances may, however, warrant dismissing antitrust claims on a motion to dismiss, particularly after *Iqbal* and *Twombly*, when the allegations do not show antitrust injury." *TravelPass Grp., LLC v. Caesars Ent. Corp.*, 2019 WL 5691996, at *22 (E.D. Tex. Aug. 29, 2019), *report and recommendation adopted*, 2019 WL 4727425 (E.D. Tex. Sept. 27, 2019) (quoting *Natkin v. Am. Osteopathic Ass'n*, 2018 WL 452165, at *6 (D. Or. Jan. 17, 2018)).

With this rubric in mind, CosMX's complete lack of antitrust standing comes into focus with respect to its Innovation Labor Market-related claims. When a plaintiff alleges a

monopsonization claim like this, there are only two potentially-affected types of plaintiff: (1) workers whose wages or options are anticompetitively suppressed by the scheme, or (2) a competing employer whose is unable to obtain adequate labor for its business due to the dominant employer's anticompetitive activities. *See Zuffa*, 216 F. Supp. 3d at 1169-70 (impacted employees); *White Mule Co. v. ATC Leasing Co. LLC*, 540 F. Supp. 2d 869, 888 (N.D. Ohio 2008) (impacted competitors).

Here, there is no good faith basis for CosMX to allege that it is an affected worker—and, indeed, it does not make such an allegation. The question is thus whether CosMX alleges ATL's actions have or are dangerously likely to prevent it from hiring enough or high enough quality workers for its business. *Id.* Again, CosMX does not; all it alleges is that ATL, in some unspecified way, harmed the Asia-based Innovation Labor Market by talking with CosMX about patent infringement issues. *See generally* Dkt. 41 (Amended Counterclaims) ¶¶ 17, 27-29, 31-32, 40, 87-90. This wholly fails to identify any actual injury (let alone antitrust injury) to CosMX's business, and without allegations of how the Innovation Labor Market might be affected by ATL's actions, it also wholly fails to plausibly establish any harm to competition that could even possibly lead to antitrust injury in the future. CosMX therefore fails to plausibly establish its antitrust standing. *See*, *e.g.*, *Norris v. Hearst Trust*, 500 F.3d 454, 466-67 (5th Cir. 2007) (finding that plaintiffs' termination as distributors of newspaper because they refused to participate in alleged antitrust violation did not qualify as antitrust injury because this injury was not caused by the alleged antitrust violation); *Anago, Inc. v. Tecnol Med. Prod., Inc.*, 976 F.2d 248, 251 (5th Cir. 1992) (affirming denial of request for injunctive relief because plaintiff's "alleged injury is not 'of the type the antitrust laws were intended to prevent'").

**B.    The State Law Counterclaims (Counts Eleven to Thirteen) Should be Dismissed Due to the Litigation Privilege and Failure to State a Legally Recognized Claim**

**1.    California Law Applies to CosMX's Unfair Competition and Attempted Extortion Counterclaims Based on California Statutes**

As a preliminary matter, California law applies to CosMX's counterclaims for (i) violation of California's unfair competition law[3] ("UCL") (Count Eleven) and (ii) attempted civil extortion under California Penal Code §§ 524 & 9 (Count Thirteen). "A federal court must follow the choice-of-law rules of the state in which it sits." *Fina, Inc. v. ARCO*, 200 F.3d 266, 269 (5th Cir. 2000) (quoting *St. Paul Mercury Ins. Co. v. Lexington Ins. Co.*, 78 F.3d 202, 205 (5th Cir. 1996)). "For . . . tort . . . cases, Texas follows the 'most significant relationship test' set out in the Restatement (Second) of Conflict of Laws § 6 and § 145." *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 802 (5th Cir. 2007) (citing *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000); *Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979)). Restatement § 6 states that a choice-of-law analysis should include these relevant factors:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6(2) (1971). In addition, Restatement § 145 states:

> Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.

---

[3] Cal. Bus. & Prof. Code § 17200 et seq.

*Id.* § 145(2).

Under Restatement §§ 6 and 145, California has the most significant relationship to CosMX's unfair competition and attempted extortion claims. According to CosMX, the conduct forming the basis of these two counterclaims—*i.e.*, ATL's attempts to coerce CosMX into entering a no-poach agreement—occurred partially in California via ATL's California-based counsel. *See* Amended Counterclaims ¶¶ 93, 101-03. Furthermore, California has a greater interest than Texas in the determination of whether ATL should be held liable for violating California statutes. Accordingly, California law should apply to these two claims.

### 2.    California's Litigation Privilege Bars Unfair Competition and Extortion Claims Based On Pre-Litigation Communications

The litigation privilege—codified by Cal. Civ. Code § 47(b)[4]—bars CosMX's unfair competition and attempted extortion claims based on ATL's pre-litigation communications asserting patent infringement and discussing settlement with CosMX. "For well over a century, communications with 'some relation' to judicial proceedings have been absolutely immune from tort liability by the privilege codified as section 47(b). . . . [and] California courts have given the privilege an expansive reach." *Rubin v. Green*, 4 Cal. 4th 1187, 1193-94 (1993). "[T]he privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990), *as modified* (Mar. 12, 1990). It also applies to "prelitigation communication . . . when it relates to litigation that is contemplated in good faith and under serious consideration." *Action Apartment Assn., Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1251 (2007).

---

[4]  As pertinent here, Cal. Civ. Code § 47(b) provides: "A privileged publication or broadcast is one made: . . . (b) In any . . . (2) judicial proceeding . . . ."

The California Supreme Court has applied these principles to hold that § 47(b) bars a claim for violation of the UCL based on pre-litigation communications. *See Rubin*, 4 Cal. 4th at 1193, 1204. In *Rubin*, a mobile home park owner sued a law firm for, among other things, unfair competition under the UCL based on its solicitation of park residents as clients to sue the owner. *Id.* at 1192-93. The California Supreme Court found that the law firm's pre-litigation communications with the residents—including discussing the factual bases and merits of a proposed lawsuit that was later filed—were "within the scope of the privilege and immune from tort liability." *See id.* at 1193, 1195. As a result, the court held "that [the] plaintiff may not avoid the bar of section 47(b) by casting his claim as one for injunctive relief under the unfair competition statute." *Id.* at 1204. Likewise, district courts have held that § 47(b) bars UCL claims. *See B-K Lighting, Inc. v. Vision3 Lighting*, 2008 WL 11286080, at *8 (C.D. Cal. May 23, 2008) (holding that § 47(b) bars unfair competition claim based on filing of patent infringement suit); *Fisher Tooling Co. v. Gillet Outilliage*, 2005 WL 8165667, at *4 (C.D. Cal. Mar. 28, 2005) (holding that § 47(b) bars unfair competition claim against law firm that drafted and sent patent lawsuit notification and cease-and-desist letters to third parties).

California courts have also held that § 47(b) bars a civil extortion claim based on pre-litigation communications related to litigation contemplated in good faith and under serious consideration. *See Flickinger v. Finwall*, 2022 WL 17333402, at *10 (Cal. Ct. App. Nov. 30, 2022); *Malin v. Singer*, 217 Cal. App. 4th 1283, 1300-01 (Cal. Ct. App. July 16, 2013). In *Flickinger*, the plaintiff sued an attorney for civil extortion based on a letter written by the attorney in his representation of a client in a breach of contract dispute with the plaintiff. 2002 WL 17333402, at *2-4. The letter rejected the plaintiff's pre-litigation demand in the breach of contract dispute, implied that the plaintiff made contract payments using money obtained from

19

illegal kickback schemes, and stated that the plaintiff's threatened lawsuit could expose the plaintiff's misdeeds to his employer. *See id.* at *2, 9-10. The California Court of Appeal held that the litigation privilege applied to the letter because "the statements in the letter bore a connection or logical relation to the litigation [contemplated and filed by the plaintiff] and advanced [the client's] interest in avoiding the litigation." *Id.* at *10. District courts have applied the same standard to bar civil extortion claims under § 47(b). *See Lee v. Lee*, 2021 WL 4459762, at *7-8 (C.D. Cal. May 13, 2021) (holding that § 47(b) applies to pre-litigation demand letter threatening a civil action for fraud because the letter showed that the counterclaim defendants "had a good-faith belief that [the defendants] had defrauded Plaintiff . . . [and] were seriously considering a civil action"); *Fleming v. Coverstone*, 2009 WL 764887, at *8 (S.D. Cal. Mar. 18, 2009) (granting motion to strike civil extortion claim from complaint based on the litigation privilege because the defendant's pre-litigation communication alleging an illegal tax scheme and unethical conduct by the plaintiff were related to the plaintiff's breach of contract claim).

In this case, CosMX's unfair competition and attempted civil extortion claims under California law are based on alleged pre-litigation communications from ATL to CosMX. These alleged communications include ATL's assertions that CosMX infringed its patents and proposed settlement terms relating to the infringement. *See* Amended Counterclaims ¶¶ 12-14, 17, 19, 92-95, 101-03. Thus, these communications were made by a litigant (*i.e.*, ATL) to achieve the purpose of this case (*i.e.*, resolve the parties' dispute about CosMX's infringement of ATL's patents) and have a direct connection to this case. Furthermore, ATL's filing of this action proves that these communications were contemplated in good faith and under serious consideration. Accordingly, § 47(b) bars CosMX's unfair competition and attempted civil extortion claims in this case and they should be dismissed.

20

### 3. Texas Does Not Recognize Attempted Extortion As a Cause of Action

CosMX's attempted extortion counterclaim based on Texas law (Count Twelve) should be dismissed because Texas law does not recognize such a cause of action. *See Jackson v. Storts*, 2021 WL 342992, at *3 (Tex. App. Feb. 2, 2021) ("The court is unaware of any stand-alone claim for civil liability based on 'extortion'[.]"); *Cunningham v. Politi*, 2019 WL 2517085, at *10 (E.D. Tex. Apr. 30, 2019) ("Plaintiff's claim for extortion is not legally cognizable under Texas law[.]"), *report and recommendation adopted*, 2019 WL 2524737 (E.D. Tex. June 19, 2019). Indeed, the Texas Theft Liability Act cited in the Amended Counterclaims as the basis for this counterclaim does not contain any reference to extortion. *See* Tex. Civ. Prac. & Rem. Code § 134. Thus, CosMX's attempted extortion claim under Texas law should be dismissed.

## VI. CONCLUSION

For the foregoing reasons, ATL respectfully requests that the Court dismiss CosMX's antitrust claims (Counts Nine and Ten) and its claims for unfair competition and attempted extortion under California and Texas law (Counts Eleven, Twelve, and Thirteen).

DATED: December 27, 2022            Respectfully submitted,

By: */s/ Michael D. Powell*
Michael D. Powell
California Bar No. 202850
Sean Pak (*pro hac vice pending*)
California Bar No. 219032
QUINN EMANUEL URQUHART & SULLIVAN LLP
mikepowell@quinnemanuel.com
seanpak@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Lance Yang
California Bar No. 260705
QUINN EMANUEL URQUHART & SULLIVAN LLP
lanceyang@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Deron R. Dacus
Texas Bar No. 790553
THE DACUS FIRM, P.C.
ddacus@dacusfirm.com
821 ESE Loop 323
Suite 430
Tyler, Texas 75701
Telephone: (903) 705-1117
Facsimile: (903) 581-2543

*Attorneys for Plaintiff Ningde Amperex Technology Limited*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a)(3). Defendant's counsel of record was served with a true and correct copy of the foregoing document by the CM/ECF system on December 27, 2022.

/s/ Nien-Ping (Ian) Wang