**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| NINGDE AMPEREX TECHNOLOGY LIMITED, | § § § | |
| Plaintiff, | § § | **Civil Action No.:  2:22-CV-232** |
| v. | § § | **JURY TRIAL DEMANDED** |
| ZHUHAI COSMX BATTERY CO., LTD., | § § | |
| Defendant. | | |

**<u>DEFENDANT/COUNTERCLAIMANT ZHUHAI COSMX BATTERY CO., LTD.'S RESPONSE TO PLAINTIFF/COUNTER-DEFENDANT NINGDE AMPEREX TECHNOLOGY LIMITED'S MOTION TO DISMISS COUNTERCLAIM COUNTS 9-13</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................. 1

COSMX'S RESPONSE TO ATL'S STATEMENT OF ISSUES ................................. 2

BACKGROUND .................................................................................................. 2

LEGAL STANDARD ............................................................................................ 5

ARGUMENT AND AUTHORITIES ....................................................................... 6

I.     COSMX'S DETAILED ALLEGATIONS AMPLY PLEAD
COGNIZABLE CLAIMS UNDER FEDERAL ANTITRUST LAW ................. 6

     A.    ATL'S ATTEMPT TO REVERSE THE BURDEN OF PROOF
BY CHARACTERIZING THE REQUIREMENTS OF THE
FTAIA AS "JURISDICTIONAL" FAILS ................................................. 6

     B.    BECAUSE COSMX PLEADED AN EFFECT ON IMPORT
COMMERCE—JUST LIKE ATL DID IN BRINGING ITS
INFRINGEMENT CLAIMS IN THE FIRST PLACE—ATL'S
ATTEMPT TO OBTAIN DISMISSAL BASED ON THE FTAIA
SHOULD BE DENIED .......................................................................... 8

     C.    EVEN IF IMPORT COMMERCE WERE NOT IMPLICATED,
COSMX PROPERLY PLED THAT THE COMMERCIAL
ACTIVITY AT ISSUE HAS A DIRECT, SUBSTANTIAL, AND
FORESEEABLE EFFECT ON U.S. COMMERCE UNDER THE
FTAIA ............................................................................................... 12

     D.    THE NOERR-PENNINGTON DOCTRINE IS INAPPLICABLE
TO COSMX'S ATTEMPTED MONOPOLIZATION CLAIM
(COUNT 9). ....................................................................................... 14

     E.    ATL'S CHALLENGES TO COSMX'S CLAIM BASED ON
ATL'S SOLICITATION OF A CONSPIRACY TO
MONOPOLIZE ARE WITHOUT MERIT (COUNT 10) ....................... 17

          1.    CONTRARY TO ATL'S ARGUMENT, THE FIFTH
CIRCUIT RECOGNIZES SOLICITATION CLAIMS
UNDER SECTION 2 .............................................................. 17

          2.    COSMX, AS ATL'S COMPETITOR, HAS ANTITRUST
STANDING BECAUSE IT HAS PROPERLY PLED
ANTITRUST INJURY ............................................................ 19

II.    COSMX HAS PLED COGNIZABLE CLAIMS UNDER CALIFORNIA
AND TEXAS LAW ........................................................................................ 23

i

**TABLE OF CONTENTS**
(continued)

Page

A.    ALTHOUGH ATL ACKNOWLEDGES THAT COSMX HAS ALLEGED THAT ATL'S ILLEGAL CONDUCT OCCURRED, IN PART, IN CALIFORNIA, A LITIGATION PRIVILEGE DOES NOT  APPLY UNDER CALIFORNIA LAW ............................ 24

1.    ILLEGAL CONDUCT IS NOT PROTECTED BY THE LITIGATION PRIVILEGE ........................................................... 25

2.    POLICIES UNDERLYING THE LITIGATION PRIVILEGE ARE ENTIRELY ABSENT AND DO NOT JUSTIFY DEVIATION FROM ILLEGALITY EXCEPTION ........................................................................... 27

B.    TEXAS LAW AUTHORIZES A CAUSE OF ACTION FOR EXTORTION ..................................................................................... 28

CONCLUSION ............................................................................................................. 29

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*American Infra–Red Radiant Co. v. Lambert Indus.*,
    360 F.2d 977 (8th Cir. 1966) ...................................................................23

*Anago, Inc. v. Tecnol Med. Prod., Inc.*,
    976 F.2d 248 (5th Cir. 1992) ...................................................................21

*Animal Science Products v. China Minmetals*,
    654 F.3d 462 (3d Cir. 2011)..................................................................6, 9

*Arbaugh v. Y&H Corp.*,
    546 U.S. 500 (2006).................................................................................7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................5, 8

*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*,
    2018 WL 3032552 (S.D. Cal. June 19, 2018)........................................26

*B-K Lighting v. Vision3 Lighting*,
    2008 WL 11286080 (C.D. Cal. May 23, 2008) .....................................24

*Bayou Fleet, Inc. v. Alexander*,
    234 F.3d 852 (5th Cir. 2000) ..................................................................15

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................8

*U.S. ex rel. Bias v. Tangipahoa Par. Sch. Bd.*,
    816 F.3d 315 (5th Cir. 2016) ....................................................................5

*Biovail Corp. Intern. v. Hoechst Aktiengesellschaft*,
    49 F. Supp. 2d 750 (D. N.J. 1999) ...........................................18, 21, 23

*Bowlby v. City of Aberdeen*,
    681 F.3d 215 (5th Cir. 2012) ....................................................................5

*Brunswick Corp v. Pueblo Bowl-O-Mat.*,
    429 US 477 (1977)..................................................................................20

*Cal-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*,
    973 P.2d 527 (Cal. 1999) ...................................................................26, 27

*In re Capacitors Antitrust Litig.*,
   2016 WL 5724960 (N.D. Cal. Sept. 30, 2016) ....................................................................10

*Cargill, Inc. v. Monfort of Colorado, Inc.*,
   479 U.S. 104 (1986)........................................................................................................19, 20

*Caribbean Broadcasting System, Ltd v. Cable & Wireless P.L.C.*,
   148 F.3d 1080 (D.C. Cir. 1998) ....................................................................................13

*Clapper v. Original Tractor Cab Co.*,
   270 F.2d 616 (7th Cir. 1959) ........................................................................................23

*Clipper Exxpress v. Rocky Mountain Motor Tarriff Bureau, Inc.*,
   690 F.2d 1240 (9th Cir. 1982) ......................................................................................16

*Cunningham v. Politi*,
   2019 WL 2517085 (E.D. Tex., April 30, 2019)............................................................29

*Dairy Foods Inc. v. Dairy Maid Prods. Coop.*,
   297 F.2d 805 (7th Cir. 1961) ........................................................................................23

*In re Delta/AirTran Baggage Fee Antitrust Litigation*,
   733 F. Supp. 2d 1348 (N.D. Ga. 2010) ........................................................................15

*Den Norske Stats Oljeselskap As v. HeereMac Vof*,
   241 F.3d 420 (5th Cir. 2001) ..........................................................................................7

*Duncan v. Heinrich*,
   591 B.R. 652 (M.D. La. 2018)........................................................................................9

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.*,
   542 U.S. 155 (2004)........................................................................................................7

*Fisher Tooling Co. v. Gillet Outilliage*,
   2005 WL 8165667 (C.D. Cal. Mar. 28, 2006) ............................................................27

*Fleming v. Coverstone*,
   2009 WL 764887 (S.D. Cal. March 18, 2009)..............................................................27

*Flickinger v. Finwall*,
   301 Cal. Rptr. 3d 728 (Cal. Ct. App. 2022) ................................................................25

*Glaverbel Societe Anonyme v. Northlake Marketing & Supply, Inc.*,
   45 F.3d 1550 (Fed. Cir. 1995)......................................................................................16

*Grip-Pak, Inc. v. Illinois Tool Works, Inc.*,
   694 F.2d 466 (7th Cir. 1982) (Posner, J.) ..................................................................16

*Harrill v. A.J.'s Wrecker Service, Inc.*,
    27 S.W.3d 191 (Tex. App.—Dallas 2000)............................................................................28

*Hewlett-Packard Co. v. Quanta Storage, Inc.*,
    961 F.3d 731 (5th Cir. 2020) ...........................................................................8, 12, 13, 14

*Hospital Authority of Metropolitan Government of Nashville v. Momenta Pharmaceutical, Inc.*,
    244 F. Supp. 3d 705 (M.D. Tenn. 2017)............................................................................15

*Hynix Semiconductor Inc v. Rambus, Inc.*,
    527 F. Supp. 2d 1084 (N.D. Cal. 2007) .............................................................................16

*Jackson v. Storts*
    2021 WL 342992 (Tex. App.—Houston [1st Dist.] Feb. 2, 2021, no pet.) ..........................29

*Jones v. Hartford Life and Accident Insurance Company*,
    2016 WL 5887601 (E.D. Tex. 2016) (Gilstrap, J.) .................................................................5

*Kimmel v. Goland*,
    51 Cal. 3d 202 (Cal. 1990) (*en banc*).................................................................................25

*Kobe v. Dempsey Pump Co.*,
    198 F.2d 416 (10th Cir. 1952) .....................................................................................16, 23

*Law Offices of Mathew Higbee v. Expungement Assistance Services*,
    214 Cal. App. 4th 544 (Cal. Ct. App. 2013) ......................................................................26

*In re Lithium Ion Batteries Antitrust Litig.*,
    2017 WL 2021361 (N.D. Cal. May 12, 2017) ..............................................................10, 14

*Lormand v. U.S. Unwired, Inc.*,
    565 F.3d 228 (5th Cir. 2009) ...............................................................................................5

*Lotes Co., Ltd. v. Hon Hai Precision Industry Co., Ltd.*,
    753 F.3d 395 (2d Cir. 2014)...........................................................................................6, 12

*Louisiana Environmental Action Network v. City of Baton Rouge*,
    677 F.3d 737 (5th Cir. 2012) ...............................................................................................8

*Malin v. Singer*,
    159 Cal. Rptr. 3d 292 (Cal. Ct. App. 2013) .......................................................................25

*McCay v. State*,
    476 S.W.3d 640 (Tex. App.—Dallas 2015, pet. denied) .....................................................28

*Minn-Chem v. Agrium*,
    683 F.3d 845 (7th Cir. 2012) (*en banc*) ....................................................................7, 12, 13

*Nobelpharma AB v. Implant Innovations, Inc.*,
  141 F.3d 1059 (Fed. Cir. 1998)................................................................................1

*Norris v. Hearst Trust*,
  500 F.3d 454 (5th Cir. 2007) ................................................................................21

*People v. Persolve, LLC.*,
  218 Cal. App. 4th 1267 (Cal. Ct. App. 2013) ................................................25, 27

*Polnac v. City of Sulphur Springs*,
  555 F. Supp. 3d 309 (E.D. Tex. 2021) ....................................................................9

*Premier Elect. Const. Co. v. Nat'l Elec. Contractors Ass'n*,
  814 F.2d 358 (7th Cir. 1987) ................................................................................22

*Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*,
  508 U.S. 49 (1993)................................................................................................16

*Rivero v. Fidelity Investments, Inc.*,
  1 F.4th 340 (5th Cir. 2001) ....................................................................................7

*Scalzo v. Baker*,
  185 Cal. App. 4th 91 (Cal. Ct. App. 2010) ....................................................25, 26

*Silberg v. Anderson*,
  50 Cal. 3d 205 (1990), *as modified* (Mar. 12, 1990) ........................................24, 25

*Todd v. Exxon Corp.*,
  275 F.3d 191 (2d Cir. 2001)..................................................................................14

*TransWeb, LLC. v. 3M Innovative Properties Co.*,
  812 F.3d 1295 (Fed. Cir. 2016)..............................................................................22

*U.S. v. Carlton*,
  900 F.3d 706 (5th Cir. 2018) ..................................................................................8

*U.S. v. Hui Hsiung*,
  778 F.3d 738 (9th Cir. 2015) ...............................................................................6, 8

*U.S. v. LSL Biotechnologies*,
  379 F.3d 672 (9th Cir. 2004) ................................................................................12

*United States v. American Airlines, Inc.*,
  743 F.2d 1114 (5th Cir. 1984) ....................................................................17, 19, 20

*US v. Zito*,
  Cause No. 1:22-cr-113 (D. Mont. 2022)............................................................18, 26

*White Mule Co. v. ATC Leasing Co. LLC,*
   540 F. Supp. 2d 869 (N.D. Ohio 2008)...................................................................20

*Wilson v. Birnberg,*
   667 F.3d 591 (5th Cir. 2012) ...................................................................................5

*Xerox Corp. v. Media Sciences Intern., Inc.,*
   511 F. Supp. 2d 372 (S.D.N.Y. 2007)....................................................................20

**Rules and Statutes**

15 U.S.C. § 6a.............................................................................................................1, 8, 9

15 U.S.C. § 15..................................................................................................................20

15 U.S.C. § 26..................................................................................................................19

Civ. Prac. & Rem. Code, §134.002..................................................................................28

Civ. Prac. & Rem. Code, §134.002(2)..............................................................................28

Tex. Pen. Code §31.02......................................................................................................28

<u>**INTRODUCTION**</u>

In an effort to avoid having to answer for its anticompetitive acts, ATL has filed a motion to dismiss that misstates the applicable law, ignores relevant cases, and contorts the allegations in CosMX's counterclaims to suit prefabricated dismissal arguments.  When ATL's arguments are measured against the actual facts and claims that CosMX has pleaded, it is apparent that the motion to dismiss should be denied.

At the outset, ATL tries to shift its dismissal burden onto CosMX by erroneously contending that the FTAIA imposes jurisdictional restrictions that bar CosMX's claims.  ATL's burden-shifting gambit fails–the Supreme Court and numerous appellate courts have made clear that the FTAIA's requirements are not jurisdictional.

Accordingly, it is ATL's burden at the pleading stage to show that the allegations in the counterclaims fail to state a claim.  It cannot meet that burden.  Pursuant to the FTAIA, the Sherman Act applies not only to import trade or commerce, but also to  conduct that has a "direct, substantial, and reasonably foreseeable" effect on U.S. commerce that gives rise to a Sherman Act claim.  15 U.S.C. § 6a.  ATL does not deny that it was involved in import commerce.  And it is clear that ATL, as alleged, has launched a direct attack on U.S. import commerce by its threats against its key competitor.  ATL has demanded that CosMX stop offering products that use its technology that may be imported into the U.S., and as part of its demands to settle U.S. patent infringement claims, ATL has tried to extort a *per se* illegal agreement to undermine CosMX's ability to compete.  ATL's claim that solicitation of a conspiracy to monopolize is not an antitrust violation is squarely contradicted by Fifth Circuit precedent.[1]

---

[1] Fifth Circuit precedent and not Federal Circuit law applies to CosMX's counterclaims.  Federal Circuit law would only apply to antitrust claims "premised on the bringing of a patent infringement suit."  *Nobelpharma AB v. Implant Innovations, Inc*., 141 F.3d 1059, 1068 (Fed. Cir. 1998).  And,

In short, CosMX has specifically pleaded that this case is about U.S. import commerce, and as a matter of law, the U.S. antitrust laws protect that commerce. After all, ATL itself boasts that it is the world's dominant manufacturer and innovator of lithium-ion battery cells with thousands of U.S. patents. Indeed, ATL's own patent infringement allegations in this Court rest on the jurisdictional claim that CosMX imports products into the U.S. Thus, ATL cannot credibly deny that its conduct toward CosMX directly affects U.S. commerce.

### CosMX's response to ATL's Statement of Issues

1. Whether the FTAIA authorizes CosMX's antitrust claims as a matter of law, where CosMX has pled both import commerce and a direct effect on U.S commerce?

2. Whether the Noerr-Pennington doctrine is irrelevant to CosMX's Count 9, when CosMX's allegations do not rely on an assertion that ATL's infringement claims are an anticompetitive act?

3. Whether CosMX has properly alleged a solicitation of conspiracy to monopolize in Count 10, under applicable Fifth Circuit precedent?

4. Whether CosMX's state law claims in Counterclaim Counts Eleven through Thirteen state a claim for relief?

### Background

CosMX and ATL both compete in the manufacturing and sales of lithium-ion battery cells (the "batteries"), particularly those used in smartphones and laptops. Dkt. 41 ¶¶ 6-7. The batteries CosMX and ATL produce are used in electronic products throughout the world, including in the largest consumer market, the United States ("U.S."). *Id.* at ¶ 24. ATL's share in the smartphone battery market is between 60-70%, and it also has the largest share in the laptop battery market with a 35% share. *Id.* at ¶ 26. ATL is a monopolist in the smartphone and laptop battery markets and it does not dispute this fact. *Id.* at ¶ 8.

---

in this case, the elements of CosMX's Section 2 claims are not unique to patent law because the claims are not dependent on deciding any patent issues. Dkt. 41 ¶ 81.

As CosMX became a more serious competitor in the smartphone and laptop battery markets, ATL, which was threatened by CosMX's rapid growth, undertook an anticompetitive campaign to stifle CosMX's expansion and further secure its own dominant shares in the smartphone and laptop battery markets. *Id.* at ¶¶ 9-20. In particular, after it was publicly disclosed that CosMX was seeking an IPO for financing its operations, *Id.* at ¶¶ 9-11, ATL's anticompetitive campaign was implemented by threatening, and following through with, patent infringement litigation. *Id.* at ¶¶ 12-14. ATL's threats of patent litigation were both a pre-text and leverage to carry out its anticompetitive acts. *Id.* at ¶ 15. In particular, "ATL's patent litigation w[as] conspicuously timed to key milestones of the financing process for CosMX." *Id.* at ¶ 16. More importantly, ATL sought to cut off CosMX from the world's largest consumer market. On June 24, 2021, U.S. counsel in San Francisco for ATL wrote to CosMX and claimed CosMX was "infringing on ATL's U.S. patents and threatened an injunction that would stop the importation into the U.S. of any products that incorporated CosMX technology, such as products made by Acer, HP, and Lenovo." *Id.* at ¶ 13. "On information and belief, ATL reached out directly to several of CosMX's customers in an attempt to encourage those customers to no longer use CosMX's lithium-ion batteries." *Id.* at ¶ 15.

With ATL's U.S. patent litigation against CosMX in motion, ATL had leverage to conduct "settlement negotiations" about four U.S. patent claims. *Id.* at ¶ 17. During "settlement negotiations," "it became clear that ATL was interested in more than just its patent claims." *Id.* "On at least three separate occasions, at meetings or conferences ostensibly focused on patent issues, ATL complained that CosMX was hiring ATL employees." *Id.* ATL made clear to CosMX that it would only agree to the resolution of the patent claims if CosMX would sign a *per se* illegal one way no-poach agreement. *Id.* ATL does not dispute that the one way no-poach agreement

that it solicited would be *per se* illegal under U.S. antitrust law. *Id.* at ¶ 18. In fact, "ATL attempted to cloak its wrongdoing by demanding that CosMX sign a non-disclosure agreement, which ATL led CosMX to believe would be used to facilitate settlement negotiations." *Id.* at ¶ 36. And, in addition to the solicitation of the *per se* unlawful one way no-poach agreement, ATL "demanded exorbitant licensing fees for its patents. *Id.* at ¶ 19. "ATL's insisten[ce] on a no-poach agreement couple[d] with its refusal to consider a license of smartphone patents and a demand for exorbitant licensing fees for licensing other allegedly infringed patents confirm[s] ATL's desire to expand and maintain its monopoly power." *Id.* at ¶ 32.

ATL's attempt to extort a *per se* illegal one way no-poach agreement not only causes actual and threatened injuries to CosMX, but it has also harmed competition in the smartphone and laptop battery markets. *Id.* at ¶ 33. This is because ATL's *per se* illegal one way no-poach agreement, "if implemented, would have significantly impacted the Smartphone Battery Market, the Laptop Battery Market, and the Innovation Labor Market, by stifling innovation in the development of lithium-ion batteries, and harming the labor and talent that drives innovation." *Id.* at ¶ 31.

ATL already controls a large share of the Innovation Labor Market, and combined with CosMX's share, the two control an estimated 60% or more. *Id.* at ¶ 30. And "[t]he ability to grow and succeed…is highly dependent on a business establishing itself at the technological forefront." *Id.* at ¶ 34 "ATL's attempt to lock up its employees by preventing its strongest competitor from hiring those employees…forecloses competition for one of the most important elements in producing lithium-ion batteries: the technological skill and know-how that leads to innovation and product improvements." *Id.* at ¶ 38.

Competition has been harmed because "[t]he fact that ATL followed through in pursuing this lawsuit when CosMX refused to agree to ATL's unlawful terms is a warning to other industry

participants who may have been subject to a similar scheme, but may not have had the wherewithal to resist like CosMX" *Id.* at ¶ 39.  CosMX "has incurred costs and legal fees responding to ATL's allegations prior to and in conjunction with the filing of the lawsuit as well as the multiplicity of proceedings." *Id.* at 40.  Furthermore, "ATL's conduct may have already caused a chilling effect on the hiring market in this specialized market." *Id.* at ¶ 39.

ATL's solicitation of an illegal no-hire agreement is both the intermediate step and the anticompetitive act in its overall scheme to harm CosMX and competition by attempting to monopolize the smartphone and laptop battery markets.  *Id.* at ¶ 31-32.  As a result of ATL's anticompetitive conduct, CosMX is forced to defend this patent infringement suit because of CosMX's refusal to give into ATL's coercion of a *per se* illegal agreement.  *Id.* at ¶¶ 40-41.

## LEGAL STANDARD

Motions to dismiss for failure to state a claim are "viewed with disfavor and rarely granted." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).  When a federal court reviews a complaint on a motion to dismiss, "it must assume that all well-pleaded facts are true and must view them in a light most favorable to the non-moving party." *Jones v. Hartford Life and Accident Insurance Company*, 2016 WL 5887601 at *1 (E.D. Tex. 2016) (Gilstrap, J.) (citing *Bowlby v. City of Aberdeen*, 681 F.3d 215, 218 (5th Cir. 2012).  Moreover, "[t]he court's inquiry should focus on the complaint as a whole, 'regardless of how much of it is discussed in the motion to dismiss.'" *U.S. ex rel. Bias v. Tangipahoa Par. Sch. Bd.*, 816 F.3d 315, 321 (5th Cir. 2016) (quoting *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012)).  A plaintiff or counterclaimant is not required to plead facts that would "probably" establish a violation; all that is required is that the factual allegations, taken as true, demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

**ARGUMENT AND AUTHORITIES**

I.   **CosMX's Detailed Allegations Amply Plead Cognizable Claims Under Federal Antitrust Law**

ATL does not contest for purposes of its Rule 12 motion that CosMX has pleaded relevant product and geographic markets under the antitrust laws; that ATL possesses or has a dangerous probability of obtaining monopoly power in both the Smartphone Battery Market and the Laptop Battery Market; and that the no-poach agreement ATL solicited would constitute a *per se* violation of the Sherman Act.  Instead, it focuses its argument on the fact-bound contention that ATL's and CosMX's actions do not have a significant enough impact on the U.S. under the FTAIA to be subject to scrutiny by this Court.  Alternatively, CosMX argues that the attempted monopolization claim under Count 9 is barred by the *Noerr-Pennington* doctrine, and that the solicitation of a conspiracy to monopolize under Count 10 fails to plead the existence of an "agreement" between CosMX and ATL, and fails to plead an antitrust injury.  Each of these arguments fail.

A.   **ATL's Attempt to Reverse the Burden of Proof by Characterizing the Requirements of the FTAIA as "Jurisdictional" Fails**

ATL's motion fails at the outset in attempting to cast its FTAIA argument in terms of whether this Court "lacks subject-matter jurisdiction" under Rule 12(b)(1).  Dkt. 63 at 2.  However, courts have repeatedly rejected any notion that the FTAIA is a limitation on subject matter jurisdiction.  Accordingly, ATL's Rule 12(b)(1) plea for dismissal can be easily denied.

The FTAIA does not set limits on subject matter jurisdiction, but it is simply a "component of the merits of a Sherman Act Claim involving nonimport trade or commerce with foreign nations."  *U.S. v. Hui Hsiung*, 778 F.3d 738, 751 (9th Cir. 2015) (jury instructed to make findings on effect on commerce).  "Unmoored from the question of subject matter jurisdiction, the FTAIA becomes just one additional merits issue."  *Animal Science Products v. China Minmetals*, 654 F.3d 462, 469 (3d Cir. 2011); *see also Lotes Co., Ltd. v. Hon Hai Precision Industry Co., Ltd.*, 753 F.3d

395, 398, 408 (2d Cir. 2014) (overruling prior precedent and holding that "the requirements of the FTAIA are substantive and nonjurisdictional in nature"). And as the Seventh Circuit held in an *en banc* opinion, this is "not a picky point that is of interest only to procedure buffs." *Minn-Chem v. Agrium*, 683 F.3d 845, 852 (7th Cir. 2012) (*en banc*). A motion to dismiss for lack of subject matter jurisdiction would place the burden of proof on the proponent of jurisdiction (i.e., CosMX) but that approach is misguided since the FTAIA is not a jurisdictional statute.

This bevy of appellate precedent holding that the FTAIA is not jurisdictional follows from a Supreme Court decision that ATL inexplicably ignores. In *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006), the Supreme Court laid down a bright line rule for determining whether a federal statute creates a jurisdictional limitation. It stated that:

> If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.

*Id.* at 515-16 (internal citations omitted).

Since *Arbaugh* in 2006, no court has adopted ATL's position that the FTAIA creates a jurisdictional bar under Rule 12(b)(1), and every appellate court to consider the issue has rejected such a claim. While the Fifth Circuit has not directly considered the issue, it has repeatedly applied the *Arbaugh* rule in a variety of contexts.[2] *See Rivero v. Fidelity Investments, Inc.*, 1 F.4th 340 (5th Cir. 2001) (applying the bright line rule from *Arbaugh* to determine whether the "except"

---

[2] ATL relies on two pre-*Arbaugh* cases in its assumption that the FTAIA is jurisdictional: *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420 (5th Cir. 2001), and *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155 (2004). But neither of those cases addressed whether the FTAIA was substantive or jurisdictional in nature. In *HeereMac*, the Fifth Circuit assumed without deciding that the FTAIA was jurisdictional. 241 F.3d at 428, 431. But that assumption is not a holding, and indeed the assumption is refuted by the Supreme Court's subsequent decision in *Arbaugh* and the litany of later decisions applying that precedent to the FTAIA.

clause of the declaratory judgment act was jurisdictional); *Louisiana Environmental Action Network v. City of Baton Rouge*, 677 F.3d 737 (5th Cir. 2012) (applying the *Arbaugh* principle to the Clean Water Act); *U.S. v. Carlton*, 900 F.3d 706 (5th Cir. 2018) (applying the *Arbaugh* principle to determine if a district court has jurisdiction to consider successive § 3582(c)(2) motions).

Thus, there is simply no credible basis for claiming that the FTAIA imposes jurisdictional limits on this Court's ability to hear CosMX's antitrust claims. The FTAIA, instead, is an element of an antitrust claim. The pleading of that claim should be analyzed under the well-recognized standards of Rule 12(b)(6), in accordance with *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). As discussed below, CosMX has properly pled that: (1) ATL is engaged or involved in "import trade," which does "does not fall within the FTAIA at all," *Hus Hsiung*, 778 F.3d at 754; and (2) even if non-import commerce were at issue, ATL's conduct has a "direct, substantial, and reasonably foreseeable effect" on U.S. commerce under the FTAIA. *See* 15 U.S.C. § 6a; Dkt. 41 ¶¶ 6-9, 24. CosMX's allegations on these points must be accepted as true at this early stage of the case. *Iqbal*, 556 U.S. at 678. The resolution of any factual disagreements ATL may have with these allegations, which are elements of the antitrust violation, are appropriately resolved by the jury at trial. *See, e.g. Hewlett-Packard Co. v. Quanta Storage, Inc.*, 961 F.3d 731 (5th Cir. 2020) (antitrust jury award affirmed against Taiwanese manufacturer for $438 million).

### B. Because CosMX Pleaded an Effect on Import Commerce—Just Like ATL Did in Bringing its Infringement Claims in the First Place—ATL's Attempt to Obtain Dismissal Based on the FTAIA Should Be Denied

ATL acknowledges that the FTAIA is inapplicable to import commerce, but it argues that Counts 9 and 10 should be dismissed because those counts "rely entirely on non-import activity in China." Dkt. 63 at 7. ATL's argument ignores CosMX's actual pleading in this case. Burying its

- 8 -

head in the sand about the actual allegations in the case is not a basis for granting a motion to dismiss.

The FTAIA states that the Sherman Act "shall not apply to **conduct involving** trade or commerce (***other than import trade or import commerce***) with foreign nations…" 15 U.S.C. § 6a (emphasis added). CosMX has properly plead the import commerce exclusion under the FTAIA for two reasons. First, ATL is engaged in import commerce. Second and alternatively, ATL's anticompetitive conduct involves import commerce. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 470 (3d Cir. 2011) ("[T]he relevant inquiry is whether the defendants' alleged anticompetitive behavior 'was directed at an import market.' Or, to phrase it slightly differently, the import trade or commerce exc[lusion] requires that the defendants' conduct target import goods or services" (internal citations omitted)).

ATL claims that neither it nor CosMX "directly sell[s], import[s], or distribut[es] products to consumers in the U.S." Dkt. 63 at 1. That is a remarkable about-face because ATL's own pleadings in this case say the opposite. ATL repeatedly admits in its own U.S. patent infringement claims that CosMX is "(i) making, using, selling, offering for sale, and/or importing into the United States.…the Accused Products,… or (ii) inducing others to use, import, purchase, or sell the Accused Products in the United States..." Dkt. 64 at ¶¶ 44, 53, 62, 71; *see Polnac v. City of Sulphur Springs*, 555 F. Supp. 3d 309, 327 (E.D. Tex. 2021) ("Documents in judicial actions and cases' dockets are public records of which any court can take judicial notice.") (quoting *Duncan v. Heinrich*, 591 B.R. 652, 655 n.2 (M.D. La. 2018)). But aside from this glaring inconsistency, which contradicts the jurisdictional basis for ATL's infringement claims, the proper analysis, as stated above, is whether **ATL** engages in either import commerce or whether its anticompetitive conduct involves import commerce.

Here, it is clear that CosMX's pleading meets the standard for alleging import commerce under applicable law. First, CosMX alleges that "ATL is the dominant manufacturer" in the smartphone and laptop lithium-ion battery markets. Dkt. 41 ¶ 8. It also alleges the geographic market for smartphone and laptop lithium-ion batteries is world-wide, and that ATL enjoys a 60-70% and 35% market share in the smartphone and laptop lithium-ion battery markets, respectively. *Id.* at ¶¶ 24-26. Further, ATL boasts that "it is 'the world's leading producer and innovator of lithium-ion batteries.' [and that ATL] has 'thousands of patents in the United States…'" *Id.* at ¶ 27.

ATL argues that the lithium-ion batteries are sold to battery pack manufacturers outside the U.S. before subsequently being incorporated into products imported to the U.S. Dkt. 63 at 1. Import commerce under the antitrust law is implicated where products are first incorporated into another product before being shipped to or sold in the U.S. This is the holding in other antitrust cases involving the FTAIA. Most notably, in *In re Lithium Ion Batteries Antitrust Litig.*, 2017 WL 2021361 at *4-5 (N.D. Cal. May 12, 2017), the court found that the foreign defendants' conduct implicated import commerce where lithium-ion batteries were "incorporated into electronic goods intended for sale in the U.S. and sold in the U.S.…" *See also In re Capacitors Antitrust Litig.*, 2016 WL 5724960, at *6-7 (N.D. Cal. Sept. 30, 2016) (defendants' conduct involved import commerce based on allegations that defendants sold plaintiff's capacitors that were incorporated into manufactured products shipped to the U.S.). Here, ATL engages in import commerce under the antitrust laws because its batteries are incorporated into products eventually sold in the U.S. Dkt. 63 at 1; *see also* Dkt. 8 ¶¶ 35, 37, 49, 51.

Secondly, CosMX alleges import commerce under applicable law because ATL's conduct targets import goods and services. In its patent infringement claims, ATL alleges "CosMX

regularly introduces the Accused Products into the stream of commerce…knowing and intending that the Accused Products will ultimately be offered for sale and/or sold…to residents of the United States…or such products that will be imported into the United States…" Dkt. 8 ¶ 11  Moreover, ATL's San Francisco-based attorneys threatened to enjoin the importation into the U.S. of any products with CosMX technology.  Dkt. 41 ¶ 13.  This allegation by ATL makes it painstakingly clear that ATL's conduct toward CosMX targets U.S. import commerce.

In further support, CosMX alleges that ATL, knowing that CosMX's batteries may be included in products offered, sold, and imported into the U.S. "[i]n an effort to create and expand its monopoly power in the relevant markets…undert[ook] a deliberate scheme to coerce CosMX not to hire ATL's employees.  *Id.* at ¶ 35.  This conduct by ATL clearly implicates import commerce as evidenced by CosMX's allegations.   ATL's one-way no-poach agreement specifically targeted the Innovation Labor Market which is the input that drives the manufacturing and sale of lithium-ion batteries throughout the world, including the U.S.  *Id.* at ¶ 38.  In other words, ATL's solicitation of a *per se* unlawful no-poach agreement targets lithium-ion batteries that are incorporated into products entering the U.S.

Accordingly, the restrictions of the FTAIA are simply inapplicable because the conduct alleged in the counterclaim implicates U.S. import commerce.   ATL is engaged in import commerce, and its solicitation of a *per se* unlawful no-poach agreement also involves import commerce because it is part of a scheme to target the importation of goods into the U.S.  ATL's focus on CosMX's supposed failure to include allegations about CosMX's own conduct involving import commerce is irrelevant to the proper analysis under the FTAIA.

**C.    Even if Import Commerce Were Not Implicated, CosMX Properly Pled that the Commercial Activity at Issue has a Direct, Substantial, and Foreseeable Effect on U.S. Commerce under the FTAIA**

ATL essentially ignores the allegations about import commerce which is at issue here. Apparently recognizing that import commerce eliminates the FTAIA as an obstacle, ATL instead jumps to the general test for foreign trade under the FTAIA.  This test, of course, is the wrong standard for import commerce.

As the Fifth Circuit has explained, "imports fall within the ordinary scope of the Sherman Act.  But all other foreign conduct must pass a two-prong test to satisfy the strictures of the FTAIA. The conduct must (1) have 'a direct, substantial, and reasonable foreseeable effect' on U.S. trade, and (2) the effect must 'give rise to an antitrust cause of action.'"  *Hewlett-Packard*, 961 F.3d at 737 (citations omitted).

Under the first prong of the test one must determine whether the allegations have a direct effect on the relevant alleged markets, here the markets for smartphone and laptop lithium-ion batteries, which encompasses U.S commerce, and which CosMX has done.

ATL cites the Ninth Circuit's opinion nearly 20 years ago in *U.S. v. LSL Biotechnologies* for the contention that ATL's conduct is local to China and does not have a direct effect on U.S. commerce.  379 F.3d 672 (9th Cir. 2004); Dkt. 63 at 10.  In *LSL*, the Ninth Circuit held that an agreement to ban the sale of modified tomato seeds in Mexico was not actionable under the Sherman Act because the agreement did not have a direct effect on U.S. commerce.  *LSL*, 379 F.3d at 681-683.  It found that an "effect is 'direct' if it follows as an immediate consequence of the defendant's activity.  *Id.* at 680.  However, both the Second and Seventh Circuits in more recent opinions have rejected the *LSL* court's narrow interpretation.  *See Lotes*, 753 F.3d at 410-412; *see Minn-Chem, Inc.* 683 F.3d at 857.  The most extensive analysis was Judge Wood's opinion in *Minn-Chem*, which reasoned that "demand[ing] a foreseeable, substantial, and 'immediate'

consequence on import or domestic commerce comes close to ignoring the fact that straightforward import commerce has already been excluded from the FTAIA's coverage." *Minn Chem, Inc.*, 683 F.3d at 857. Instead, those Circuits have adopted a proximate cause interpretation of "direct." The Fifth Circuit recently followed this approach in *Hewlett-Packard* where it affirmed an antitrust jury award against a Taiwanese manufacturer for price fixing optical disk drives that were shipped to another country to be incorporated into computers that were eventually shipped to and sold in the U.S. 961 F.3d at 737-741; *see also Caribbean Broadcasting System, Ltd v. Cable & Wireless P.L.C.*, 148 F.3d 1080 (D.C. Cir. 1998) (after FTAIA analysis, jurisdiction existed over antitrust suit between two foreign companies about broadcasting in the Caribbean).

Here, CosMX has sufficiently alleged a direct effect on U.S. commerce. Dkt. 41 ¶¶ 10-19. CosMX alleges that ATL, as a monopolist (or attempted monopolist), is controlling a key input to successful competition in this highly specialized industry (i.e., the movement of labor among highly specialized employees) as a means to stifle competition in the largest consumer market in the world. ATL is attempting to stop imports by CosMX into the U.S with a "settlement" demand for a no-hire agreement as part of its US patent litigation campaign. *Id.* at ¶¶ 13, 38-41, 80, 84. CosMX, accordingly, has properly plead a direct effect on U.S. commerce because ATL's conduct targets markets (which includes the U.S.) in which CosMX's batteries are incorporated into products that are imported to and sold in the U.S. Dkt. 41 ¶¶ 83, 87. Further, this has a direct effect on U.S. commerce because ATL's, conduct, if unchecked, will force U.S. companies to do business with a monopolist in the laptop and smartphone lithium-ion battery markets. *See Minn-Chem, Inc.*, 683 F.3d at 859 (holding that prices fixed in a foreign market were a proximate cause of higher prices in the U.S. and therefore defendant's conduct had a direct effect on U.S. commerce).

The second prong of the FTAIA test is also met.  The effect must "give rise to an antitrust cause of action. *Hewlett-Packard*, 961 F.3d at 737.  ATL lists a number of examples of allegations that CosMX has "failed" to plead.  Dkt. 63 at 9-11.  But these arguments completely miss the root of the inquiry.  Rather, the question that must be analyzed is whether CosMX has adequately pled that ATL's *per se* illegal conduct directly affected smartphone and laptop lithium-ion battery commerce in the U.S.  ATL does not dispute that it does, nor could it.  It was part of an effort to stop the importation of a competitor's product into the U.S.  As ATL recognizes, U.S. commerce is directly at issue.  ATL, in fact, urges this Court to adopt California law because according to CosMX "ATL's attempts to coerce CosMX into entering a no-poach agreement—occurred partially in California via ATL's California-based counsel."  Dkt. 63 at 18.  In other words, the U.S. is not just a side show but it is the location, in part, of the anticompetitive conduct itself.

ATL, moreover, does not dispute that CosMX has properly pled relevant markets for its counterclaims.  *See Todd v. Exxon Corp.*, 275 F.3d 191, 199-200 (2d Cir. 2001) ("Because market definition is a deeply fact-intensive inquiry, courts hesitate to grant motions to dismiss for failure to plead a relevant product market.").  An attempt to monopolize the smartphone and laptop lithium-ion battery markets, in which ATL is the dominant competitor, will have an effect on lithium-ion battery commerce in the U.S. because U.S. companies must deal with a monopolist.  *See In re Lithium Ion Batteries Antitrust Litig.*, 2017 WL 2021361 at *4 (N.D. Cal. May 12, 2017) (finding that the defendant's conduct implicated import commerce where lithium-ion batteries were "incorporated into electronic goods intended for sale in the U.S. and sold in the U.S….").

### D.    The Noerr-Pennington Doctrine is Inapplicable to CosMX's Attempted Monopolization Claim (Count 9).

Other than its misplaced FTAIA argument, the only ground for dismissal that ATL asserts with respect to the attempted monopolization claim of Count 9 is its contention that ATL is entitled

- 14 -

to immunity under the *Noerr-Pennington* doctrine because CosMX has failed to plead that the sham litigation exception applies. Dkt. 63 at 12. Once again, ATL asserts a ground for dismissal that misconstrues the allegations in the counterclaim. The *Noerr-Pennington* doctrine is not applicable because CosMX is not alleging that ATL's patent infringement suit itself meets the *Noerr* test. *See Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 859 (5th Cir. 2000) ("The *Noerr-Pennington* doctrine confers immunity to private individuals seeking anticompetitive action from the government.").

CosMX alleges that ATL's solicitation of the no-poach agreement is the anticompetitive act. Dkt. 41 ¶¶ 17, 81. ATL's patent infringement lawsuits are only used as leverage to carry out its anticompetitive act, albeit unsuccessfully. *Id.* at ¶ 18. Patent infringement claims are just one way[3] ATL tried to coerce CosMX into agreeing to the no-poach offer. *Id.* at ¶ 17. Because antitrust liability is not dependent on the outcome of patent litigation, the *Noerr-Pennington* doctrine is inapplicable. *See In re Delta/AirTran Baggage Fee Antitrust Litigation*, 733 F. Supp. 2d 1348, 1365 (N.D. Ga. 2010) (declining to apply *Noerr-Pennington* where basis of plaintiff's claims did not seek to impose liability for defendant's petition of the government); *Hospital Authority of Metropolitan Government of Nashville v. Momenta Pharmaceutical, Inc.*, 244 F. Supp. 3d 705, 715-716 (M.D. Tenn. 2017) (declining to apply *Noerr-Pennington* where "the crux of the anticompetitive scheme that plaintiff alleges is not the [defendant's petitioning] but rather [defendant's] actions surrounding the purported adoption of [a patented chemical process by a non-profit organization.]").

CosMX, moreover, has additionally alleged that ATL's patent infringement action is part of an overall "scheme" to monopolize the smartphone and laptop lithium-ion battery markets, *see*

---

[3] ATL also demanded exorbitant licensing fees. Dkt. 41 ¶ 19.

Dkt. 41 at ¶¶ 20, 80, which also makes *Noerr-Pennington* inapplicable here. *See Glaverbel Societe Anonyme v. Northlake Marketing & Supply, Inc.*, 45 F.3d 1550, 1558 (Fed. Cir. 1995) (stating "even if a lawsuit has a colorable basis, it can violate the antitrust laws if filed for an improper purpose.")[4]; *Clipper Exxpress v. Rocky Mountain Motor Tarriff Bureau, Inc.*, 690 F.2d 1240, 1263-1265 (9th Cir. 1982) (holding that petitioning an agency could be part of a scheme to violate the antitrust laws even though the petitioning itself was protected under the *Noerr-Pennington* doctrine); *Grip-Pak, Inc. v. Illinois Tool Works, Inc.*, 694 F.2d 466, 472-473 (7th Cir. 1982) (Posner, J.) ("litigation having a colorable basis can still violate the antitrust laws."); *Kobe v. Dempsey Pump Co.*, 198 F.2d 416, 425 (10th Cir. 1952).(although infringement action standing alone may not be sufficient, "but when considered with the entire monopolistic scheme which preceded [it]…" the infringement action "may be considered as having been done to give effect to the unlawful scheme.").

In particular, in *Hynix Semiconductor Inc v. Rambus, Inc.*, 527 F. Supp. 2d 1084, 1096-1097 (N.D. Cal. 2007). the court concluded that "scheme" antitrust allegations could "include constitutionally protected litigation within the 'overall course of conduct,' but only those in which the patent litigation is 'causally connected' to anticompetitive harms." The court clarified the causal connection standard stating that "before otherwise protected litigation can be part of an 'anticompetitive scheme' claim, the court must first find that the other aspects of the scheme independently produce anticompetitive harms." *Id.*

CosMX meets the *Hynix Semiconductor* test for "scheme" allegations. Here, CosMX has sufficiently alleged that ATL's patent infringement action is part of a larger scheme that ATL has

---

[4] *Glaverbel* was published, nearly two years after the Supreme Court's decision in *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49 (1993), which was cited by ATL.

undertaken to monopolize the smartphone and laptop lithium-ion battery markets.  Dkt. 41 ¶¶ 20, 80.  That scheme included instituting patent infringement actions that conspicuously coincided with key dates in CosMX's convertible debt financing as part of its IPO, reaching out to CosMX's customers and encouraging them to no longer use CosMX's lithium-ion batteries, demanding exorbitant licensing fees, and soliciting a one way no-poach agreement.  *Id.* at ¶¶ 10-19.  These acts, taken together, constitute an unlawful scheme to monopolize the smartphone and laptop lithium-ion battery markets.

For these reasons, the *Noerr-Pennington* affirmative defense is not applicable at the dismissal stage, and at best, could be heard at trial.  The motion to dismiss Count 9 should be denied.

### E.    ATL's Challenges to CosMX's Claim Based on ATL's Solicitation of a Conspiracy to Monopolize Are Without Merit (Count 10)

#### 1.    Contrary to ATL's Argument, the Fifth Circuit Recognizes Solicitation Claims Under Section 2

ATL argues that CosMX's Counterclaim Count 10 fails because "Section 2 does not provide a cause of action for a 'solicitation' (i.e., an attempt) to participate in a conspiracy to monopolize," and because there is no alleged agreement.  Dkt. 63 at 14.  Here, CosMX resisted ATL's coercive efforts to force CosMX to go along with its unlawful plan.  CosMX's antitrust claim is based on ATL's unlawful ***solicitation*** of an illegal antitrust violation.  The Fifth Circuit, moreover, has specifically recognized solicitation claims under the Sherman Act.

In *United States v. American Airlines, Inc.*, the Fifth Circuit held that an agreement was not an "absolute prerequisite for the offense of attempted joint monopolization."  743 F.2d 1114, 1122 (5th Cir. 1984).  There, Robert Crandall, the President of American Airlines called the president of Braniff and asked him to fix air-fare prices.  *Id.* at 1116.  Although Braniff's CEO did not agree to Crandall's proposal, the government nonetheless brought charges against Crandall for

attempted monopolization through a conspiracy since both companies had significant market shares for non-stop flights between Dallas-Fort Worth and eight major cities. *Id.* at 1115. Had Braniff agreed to Crandall's offer to fix prices the two would have immediately enjoyed joint monopoly power. *Id.* at 1118. The Fifth Circuit concluded that solicitation accompanied by the requisite intent may constitute an attempt under the Sherman Act. *Id.*

This same reasoning was applied in the patent context in *Biovail Corp. Intern. v. Hoechst Aktienegesellschaft*, 49 F. Supp. 2d 750 (D. N.J. 1999), whose facts are very similar to those before this Court. There the defendant "set forth a proposal which [plaintiff] characterize[ed] as an attempt to engage [plaintiff] in 'an illegal restraint of trade.'" *Id.* at 771. The defendant suggested that it would refrain from patent infringement litigation if the plaintiff accepted the solicitation. *Id.* The plaintiff rejected the offer and brought claims under Section 2. *Id.* at 758. The court found, citing the *American Airlines* opinion, that the solicitation, "regardless of whether [plaintiff] suffered injury[,]...could well provide support for [plaintiff's] assertion that defendants...were wil[l]fully attempting to obtain or maintain a monopoly." *Id.* at 771; *see also U.S. v. Zito*, Indictment, Case No. 1:22-cr-113 (Sept. 19, 2022 D. Mont.) (bringing charges for attempted monopolization under Section 2 where the defendant is accused of soliciting a *per se* illegal restraint of trade).

Here, CosMX rejected ATL's solicitation to enter into a no poach agreement, which is a *per se* illegal agreement. Dkt. 41 ¶¶ 18, 20. As in *American Airlines*, however, an invitation to conspire can create a dangerous probability of monopoly power, and had CosMX accepted ATL's solicitation of the no-poach agreement, ATL would have strengthened its dominant market position. *Id.* at ¶ 88. ATL's argument that an agreement is necessary is unfounded. Requiring an agreement for a solicitation claim would incentivize firms to propose the formation of cartels with

monopoly power being achieved upon acceptance. *See American Airlines*, 743 F.2d at 1122. Further, there would be no downside to this type of proposal since no antitrust liability would attach to a declined offer. *See id.* Moreover, although ATL was unable to successfully solicit a *per se* unlawful no-poach agreement, its lack of success has no bearing on its liability under Section 2 for attempting to monopolize.

For these reasons, ATL has sufficiently pled a cognizable claim because the Fifth Circuit recognizes solicitation claims under Section 2, and an agreement is not a necessary prerequisite.

### 2. CosMX, as ATL's Competitor, has Antitrust Standing Because it has Properly Pled Antitrust Injury

ATL claims that CosMX lacks antitrust standing to complain about ATL's demand for a *per se* illegal restraint of trade. However, ATL's argument that CosMX cannot plead antitrust injury based on a scheme in which ATL, the world's largest lithium battery manufacturer for cellphones and laptops, attempted to coerce CosMX, its largest competitor, to enter into a *per se* illegal agreement, with the purpose of maintaining and enhancing ATL's monopoly power, is hard to comprehend. The threatened and real injuries alleged by CosMX are exactly the types of injuries the antitrust laws were intended to prevent.

CosMX asks for an injunction against ATL in light of its violation of the antitrust law. Dkt. 41 at 30-31. Section 16 of the Clayton Act states: "[a]ny person, firm, corporation, or association shall be entitled to sue for and have injunctive relief…against **threatened** loss or damage by a violation of the antitrust laws. 15 U.S.C. § 26 (emphasis added). To plead antitrust injury under Section 16, a "private plaintiff must [only] allege **threatened** loss or damage 'of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful.'" *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 113 (1986) (quoting

*Brunswick Corp.*, 429 U.S. at 489) (emphasis added).  Further, Section 16 does not require any showing of injury to "business or property."  *Id.* at 111.

However, even where only monetary damages are sought, Section 4 of the Clayton Act, 15 U.S.C. § 15, which authorizes "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws" to sue, merely requires  a plaintiff to "allege an injury of the type the antitrust laws were designed to prevent."  *Cargill,* 479 U.S. at 111.  To seek relief under Section 4, "a plaintiff 'does not necessarily' need to allege and 'prove an actual lessening of competition in order to recover,' so long as competition is likely to decrease…"  *Xerox Corp. v. Media Sciences Intern., Inc.*, 511 F. Supp. 2d 372, 381 (S.D.N.Y. 2007) (quoting *Brunswick Corp v. Pueblo Bowl-O-Mat.*, 429 US 477, 489 n.14 (1977)).

Here, CosMX has satisfactorily pled antitrust injury under both Sections 16 for injunctive relief and under Section 4 for damages, and thus it has antitrust standing.  ATL asserts that "workers whose wages or options are anticompetitively suppressed" would have standing, but in the same sentence, it also acknowledges that "a competing employer who[] is unable to obtain adequate labor for its business due to the dominant employers' anticompetitive activities" would have standing as well.  Dkt. 63 at 16, (citing *White Mule Co. v. ATC Leasing Co. LLC*, 540 F. Supp. 2d 869, 888 (N.D. Ohio 2008)).  In other words, ATL is using its market power as the dominant lithium-ion battery manufacturer with hundreds of U.S. patents to coerce a competitor into an illegal no-hire agreement that will only maintain and enhance the market power of ATL.

ATL wrongfully equates the lack of a consummated no-hire agreement with antitrust standing.  This plainly contradicts the Fifth Circuit's decision in *American Airlines*.  743 F.2d at 1122 (if solicitation claims are not allowed, "an individual is given a strong incentive to propose the formation of cartels.  If the proposal is accepted monopoly power is achieved; if the proposal

- 20 -

is declined, no antitrust liability attaches."); *see also Biovail*, 49 F. Supp. 2d at 772 (plaintiff still had standing to challenge the solicitation scheme, despite its refusal to acquiesce to the illegal restraint of trade). CosMX has pled that "ATL's attempt to lock up its employees by preventing its strongest competitor from hiring those employees…forecloses competition for one of the most important elements in producing lithium-ion batteries: the technological skill and know-how that leads to innovation and product improvements." Dkt. 41 ¶ 38. *see also* Dkt. 63 at 7 (ATL argues that harm occurs where a "rival competitor" is precluded from obtaining workers).

ATL's reliance on *Norris v. Hearst Trust*, 500 F.3d 454 (5th Cir. 2007) is misplaced. There, the Fifth Circuit held that the termination of newspaper distributors reporting on incorrect circulation numbers did not qualify as an antitrust injury to the distributors. *Id.* at 466-69. The court explained that there was no antitrust injury because the plaintiffs were neither competitors nor consumers in the market at issue. *Id.* at 466-68. Nor is *Anago, Inc. v. Tecnol Med. Prod., Inc.*, 976 F.2d 248 (5th Cir. 1992) helpful. There, the Fifth Circuit drew the unremarkable conclusion that a target company in a takeover did not have standing to stop the merger. *Id.* at 249-250. The target would "suffer a loss of independence" after the merger, regardless of whether the merger violated the antitrust laws, and after the merger, it would "benefit from any increased prices or decreased competition that might result." *Id.* at 251.

Here, CosMX is undoubtedly a competitor in the market that ATL is attempting to monopolize—the smartphone and laptop lithium-ion battery markets. ATL does not dispute it is a competitor. Both CosMX and competition in the relevant markets will suffer threatened or actual injury that stems from ATL's solicitation of the per se unlawful no-poach agreement. CosMX's allegations support this contention, as alleged, because ATL's scheme has a chilling effect on competition, pricing and innovation in the relevant markets. Dkt. 41 ¶¶ 33-41.

Moreover, ATL's narrow focus on the Innovation Labor Market improperly minimizes the breadth of its wrongful conduct as alleged in Count 10. As CosMX has alleged, ATL's solicitation of a *per se* unlawful no hire agreement has not only injured CosMX, but it has and will likely continue to decrease competition ***in the smartphone and laptop lithium-ion battery markets*** because it targets one of the most important elements in the production of lithium-ion batteries— the Innovation Labor Market. Dkt. 41 ¶ 38, 40. ATL's demand for an illegal no-hire agreement, targeting the Innovation Labor Market, decreases competition in the smartphone and laptop battery markets because this conduct would impact other lithium-ion battery competitors, as CosMX explains. *Id.* at ¶ 39. This is so because other lithium-ion battery competitors may not have the financial resources or wherewithal to resist such an agreement. *Id.* Those competitors, without the ability to resist such a solicitation, will be competitively hindered from competing for employees, thereby limiting innovation and competitive pricing. *Id.* at ¶¶ 33-41. And, equally important, ATL has demonstrated that it is willing to bring infringement lawsuits against competitors who compete for, and win over, ATL employees if they resist similar overtures.

ATL also ignores the allegations that its conduct has impacted competition and caused injury to CosMX's business and property. As a result of the solicitation of the no-hire agreement and continued threat of future solicitations, CosMX is unable to compete as effectively with ATL in the smartphone and laptop lithium ion-battery markets, and the innovation labor market itself. *Id.* at 33-41. CosMX has already incurred legal fees defending against this lawsuit and CosMX fears future lawsuits by ATL if it hires former ATL employees. *Id.*; *see also TransWeb, LLC. v. 3M Innovative Properties Co.*, 812 F.3d 1295, 1311 (Fed. Cir. 2016) (attorney fees incurred can form the basis for antitrust damages) (citing *Premier Elect. Const. Co. v. Nat'l Elec. Contractors Ass'n*, 814 F.2d 358, 371-76 (7th Cir. 1987) (permitting recovery of attorney's fees for defending

anticompetitive cartel suit even though sham litigation was not present))[5]; *Biovail*, 49 F. Supp. 2d 750, 772 (finding that plaintiff adequately pled antitrust injury under Section 4 because "defendants made 'specious threats' that they would institute litigation against the plaintiff which were intended to weaken and damage the plaintiff's stature in the marketplace….").

Collectively, these allegations demonstrate that CosMX has antitrust standing, and it has alleged a threatened antitrust injury under Section 16 of the Clayton Act, and an actual antitrust injury under Section 4.

## II.    CosMX Has Pled Cognizable Claims Under California and Texas Law

ATL makes cursory challenges to CosMX's state law claims, but those arguments also lack merit.  ATL does not argue that CosMX fails to state claims under California law.  Instead, ATL argues that Counts Eleven and Thirteen should be dismissed because ATL's solicitation of a per se illegal no-poach agreement is privileged as a pre-litigation communication under Section 47(b) of the California Civil Code.  Whether a fact-based evidentiary privilege can be determined through a Rule 12(b)(6) motion was specifically rejected by the district court in *Biovail* where defendant similarly claimed that solicitation of an illegal restraint of trade was a privileged settlement discussion.  *Biovail*, 49 F. Supp. 2d 750, 771.  The court held that a dismissal motion was not the place to resolve privilege issues.  *Id.*  In any event, ATL can cite no case that extends the California privilege rule in such a sweeping manner to shield illegal conduct.  Lastly, ATL

---

[5] *See also American Infra–Red Radiant Co. v. Lambert Indus.,* 360 F.2d 977, 996–97 (8th Cir. 1966) (permitting recovery of attorney fees when a patent suit is in furtherance of an illegal monopolistic scheme, though the suit itself may not be sham litigation); *Dairy Foods Inc. v. Dairy Maid Prods. Coop.*, 297 F.2d 805, 808–10 (7th Cir. 1961) (same); *Clapper v. Original Tractor Cab Co*., 270 F.2d 616, 623–24 (7th Cir. 1959) (same); *Kobe, Inc. v. Dempsey Pump Co.*, 198 F.2d 416, 424–25 (10th Cir. 1952) (same).

asserts that Texas does not recognize a civil cause of action for extortion, which contradicts the plain text of the statute.

> A.    **Although ATL Acknowledges that CosMX Has Alleged that ATL's Illegal Conduct Occurred, in Part, in California, a Litigation Privilege Does Not Apply Under California Law**

ATL first explains that according to CosMX, "ATL's attempts to coerce CosMX into entering a no-poach agreement—occurred partially in California via ATL's California based counsel." Dkt. 63 at 18. In other words, there should be U.S. antitrust jurisdiction based on ATL's application of conflict rules. When a foreign party violates the antitrust laws of the U.S. in the U.S., there should be no question about escaping U.S. antitrust jurisdiction.

In any event, the California litigation privilege does not save ATL. The statute seeks to preserve the truth-finding function of the judicial system and avoid the chilling effects that might occur if attorneys were liable for, as an example, defamation based on statements made in a demand letter or press release. *See B-K Lighting v. Vision3 Lighting*, 2008 WL 11286080 at *6 (C.D. Cal. May 23, 2008).

Section 47(b) protects communications "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation;" and (4) that are related to the litigation. The requirement that the statement be made in a judicial proceeding extends the privilege to pre-litigation communications, including settlement discussions or "***publication required or permitted by law***[.]" *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990), *as modified* (Mar. 12, 1990) (emphasis added). Despite being broader than *Noerr-Pennington*, discussed *supra*, the "communication" at issue in this case bears little resemblance to those afforded protection under Section 47(b). Most frequently, which is true in most of Plaintiffs' supporting authority as well, courts apply 47(b) in Anti-SLAPP actions, and to protect attorneys from liability and retaliatory claims for statements made in related communications, such as

- 24 -

demand letters.  *See, e.g.*, *Silberg v. Anderson*, 50 Cal. 3d 205; *Flickinger v. Finwall*, 301 Cal. Rptr. 3d 728, 732 (Cal. Ct. App. 2022); *Malin v. Singer*, 159 Cal. Rptr. 3d 292, 297 (Cal. Ct. App. 2013).

Plaintiff asks the Court to extend the litigation privilege to its unlawful solicitation of a no-poach agreement, which would be *per se* illegal under the antitrust laws.  Such an application is contrary to California precedent, as Section 47(b) does not apply to communications or conduct that violate statutes under state or federal law.  *See e.g.*  *Kimmel v. Goland*, 51 Cal. 3d 202, 212 (Cal. 1990) (*en banc*); *Scalzo v. Baker*, 185 Cal. App. 4th 91, 100 (Cal. Ct. App. 2010); *People v. Persolve, LLC.*, 218 Cal. App. 4th 1267, 1276 (Cal. Ct. App. 2013).  Even if Section 47(b) did protect statutory violations, the ample policy justifications for the privilege are wholly absent in this case.

### 1.    Illegal Conduct Is not Protected by the Litigation Privilege

Illegal communications or conduct that amounts to a statutory violation does not enjoy the privilege afforded by Section 47(b).  *Kimmel*, 51 Cal. 3d at 212*; Scalzo*, 185 Cal. App. 4th at 100. Courts considering the question have reasoned that if communication or conduct violates another statute or penal code, those statements do not achieve the objects of litigation, are frequently unrelated, and are not privileged.

Application of 47(b) to statements that themselves amount to unlawful conduct would lead to unacceptable consequences.  In *Kimmel*, the California Supreme Court proposed the following hypothetical: "If a prospective plaintiff, in anticipation of litigation, burglarized defendant's premises in order to obtain evidence, plaintiffs here would apparently apply the privilege to protect the criminal conduct."  51 Cal. 3d at 212 (information obtained for litigation in violation of a California privacy statute did not shield party from liability).  Similarly here, ATL cannot invoke the privilege to shield its unlawful solicitation of an anticompetitive agreement from judicial

scrutiny.  No case ATL cites supports such an expansive reading of the privilege.  *Accord*, *Scalzo v. Baker*, *see Scalzo v. Baker*, 185 Cal. App. 4th at 100-101 (litigation privilege does not shield individuals from liability if communication involves violation of a statute) ("The instant case and the example are comparable in that both involve violation of a penal statute, and in both cases the offending party seeks immunity from civil liability. In both, the claim must fail.").

CosMX's allegations of ATL's illegal conduct here puts this case well outside the scope of the litigation privilege recognized in the existing case law.  In Unfair Competition Law actions brought by a direct competitor, "unfair" in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as the violation of the law, or otherwise significantly threatens or harms competition." *Cal-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 973 P.2d 527 (Cal. 1999); *see also Law Offices of Mathew Higbee v. Expungement Assistance Services*, 214 Cal. App. 4th 544, 552 (Cal. Ct. App. 2013).

Moreover, no-hire agreements are treated as *per se* violations of Section 1 of the Sherman Act, which can be enforced criminally.  *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 2018 WL 3032552, at *12 (S.D. Cal. June 19, 2018).  In fact, the Department of Justice asserted its intent in 2016 to prosecute horizontal no-poach and no-hire agreements criminally, such as the one ATL sought to impose in this case.  *Joint Guidelines of the Department of Justice, Antitrust Division and the Federal Trade Commission* (October 2016).  As a result, an agreement that would bind and prevent CosMX, and *only* CosMX, from competitively hiring, would violate Section 1 of the Sherman Act as an unlawful agreement in restraint of trade.  *See US v. Zito*, Cause No. 1:22-cr-113 (D. Mont. 2022) (sentencing set for February 2023 for attempted monopolization where

competitor solicited, though never actually entered, an agreement to allocate four-state market in the paving and asphalt industry).

CosMX has pled facts and authority sufficient to allege that a statutory violation occurred, which ATL has not challenged.  Because the alleged privileged "communication" in this case is the ***actual unlawful conduct***, Section 47(b) does not apply. *See Cal-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 973 P.2d 527 (Cal. 1999); *see also People*, 218 Cal. App. 4th at 1274 (refusing to apply the litigation privilege and sustaining UCL claim where defendant's conduct violated federal and state debt collection statutes).

### 2.    Policies Underlying the Litigation Privilege Are Entirely Absent and Do Not Justify Deviation from Illegality Exception

The California litigation privilege is frequently invoked and enforced, in part, as an Anti-SLAPP statute, intended to prevent harassing litigation that may arise from statements made in a litigation demand, court filing, or communications.  In fact, the statute is most frequently applied to shield ***lawyers*** from defamation or interference claims for statements made in court filings and demand letters.  *See Fisher Tooling Co. v. Gillet Outilliage*, 2005 WL 8165667 (C.D. Cal. Mar. 28, 2006) (dismissing unfair business practices claim against opposing counsel for letters sent to customers detailing their patent enforcement action).

None of the rationales supporting the litigation privilege would justify expanding it to the conduct ATL is alleged to have undertaken in this case.  First, the solicitation of the no-hire agreement is wholly separate from and unrelated to evidence that would be relevant to the actual patent claims. *See Fleming v. Coverstone*, 2009 WL 764887 (S.D. Cal. March 18, 2009) (applying the privilege to dismiss claims of fraud, since whether or not there was fraud would determine the enforceability of the underlying contract in dispute).

Further, there is no "chilling effect" for the court to prevent Section 47(b) aims to prevent harassing litigation that may deter a litigant from exercising rights to petition a court for redress. Section 47(b) has no interest, however, in protecting illegal conduct in settlement negotiations, regardless of whether the unlawful conduct occurs before or during litigation.

### B.    Texas Law Authorizes a Cause of Action for Extortion

ATL argues that Texas law does not recognize a cause of action for civil extortion, which contradicts plain statutory text.  The Texas Legislature passed the Texas Theft Liability Act in 1989 to provide a civil cause of action for previously-enumerated theft offenses under the Texas Penal Code. Civ. Prac. & Rem. Code, §134.002.  This section provides that "[t]heft" means the unlawful appropriation of property or services "as described by Section 31.03… of the Penal Code." Civ. Prac. & Rem. Code, §134.002(2).  Additionally, there is no indication, by its text or otherwise, that the Texas Theft Liability Act excludes Section 15.01's provision in the Texas Penal Code for inchoate offenses, which applies universally throughout the Penal Code.

Section 31.02 of the Penal Code provides the intended scope of consolidated theft statute, which is defined broadly in Section 31.03.  Importantly, Section 31.02 states that "[t]heft as defined in Section 31.03 constitutes a single offense superseding the separate offenses previously known as theft, theft by false pretext…acquisition of property by threat…embezzlement, *extortion*…and receiving or concealing stolen property."  Tex. Pen. Code §31.02 (emphasis added); Texas Penal Code, Acts 1973, 63rd Leg. (1974).

Texas law, therefore, provides a cause of action for attempted civil extortion under the plain language of the statute.  *See Harrill v. A.J.'s Wrecker Service, Inc.*, 27 S.W.3d 191 (Tex. App.—Dallas 2000) (overruling lower court and allowing plaintiff to assert additional claims, including one for civil extortion); *McCay v. State*, 476 S.W.3d 640 (Tex. App.—Dallas 2015, pet.

denied) (construing penal code).  And no Texas state court has held that the consolidation of the theft statute into a single offense abrogated the cause of action for extortion.

The Texas precedent ATL cites in support of its textual argument is an unpublished opinion, *Jackson v. Storts* 2021 WL 342992 (Tex. App.—Houston [1st Dist.]  Feb. 2, 2021, no pet.), in which the court affirmed take nothing judgment on numerous claims, including extortion, for lack of proof on  damages, harm or injury.  Though the court indicates, in a footnote, it was "unaware" of  stand-alone claim for extortion, it concluded proof of damages would have been needed.  *Id.* at *3, n.4.  Plaintiff also cites *Cunningham v. Politi*, 2019 WL 2517085  at *10 (E.D. Tex., April 30, 2019), to support its claim that extortion is not cognizable under Texas law. However, that opinion relies on an earlier case that merely finds that plaintiffs failed to sufficiently plead an extortion claim under Texas law, and in the same sentence the opinion acknowledges that Texas courts have sustained extortion claims against bail bondsmen.  *Id.*  In any event, the plain text of the statute should govern.

ATL does not argue that CosMX has failed to properly plead extortion; instead, ATL asks the Court to find that no cause of action exists at all, which would be in contravention of the statutory text.  No Texas state court has held that the consolidated theft statute abrogated the existing cause of action for extortion, nor is there any indication that the Texas Legislature intended to exclude extortion from the Texas Theft Liability Act.

## CONCLUSION

For all these reasons, counterclaimant CosMX respectfully requests that the motion to dismiss be denied.  Should the Court grant the motion to dismiss, CosMX respectfully requests that the dismissal be without prejudice and that it be granted an opportunity to amend.

- 29 -

Dated:  February 3, 2023

Eric H. Findlay
Texas Bar No. 00789886

FINDLAY CRAFT PC
102 N. College Avenue, Suite 900
Tyler, TX 75702
Tel: (903) 534-1100
Facsimile: (903) 534-1137

Jeffrey C. Totten (admitted *pro hac vice*)
Lauren J. Robinson (admitted *pro hac vice*)
James R. Barney (admitted *pro hac vice*)
Tyler Latcham (admitted *pro hac vice*)
Qingyu Yin

FINNEGAN, HENDERSON, FARABOW, GARRETT
& DUNNER, LLP
901 New York Avenue, NW
Washington D.C. 20001-4413
Tel: (202) 408-4213
Facsimile: (202) 408-4400
jeffrey.totten@finnegan.com
lauren.robinson@finnegan.com
james.barney@finnegan.com
tyler.latcham@finnegan.com

Yanyi Liu (admitted *pro hac vice*)

FINNEGAN, HENDERSON, FARABOW, GARRETT
& DUNNER, LLP
Stanford Research Park
3300 Hillview Avenue, 2nd Floor
Palo Alto, CA 94304-1203
Tel: (650) 849-6626
Facsimile: (650) 849-6666
yanyi.liu@finnegan.com

Respectfully submitted,

*/s/ Charles B. Walker, Jr.*
Charles B. Walker, Jr.
Texas Bar No. 00794808
Layne E. Kruse
Texas Bar No. 11742550
Darryl W. Anderson
Texas Bar No. 24008694
Dewey J. Gonsoulin III
Texas Bar No. 24131337

NORTON ROSE FULBRIGHT US LLP
1301 McKinney St, Suite 5100
Houston, TX  77010-3095
Telephone: (713) 651-5151
Facsimile: (713) 651-5246
charles.walker@nortonrosefulbright.com
layne.kruse@nortonrosefulbright.com
darryl.anderson@nortonrosefulbright.com
dewey.gonsoulin@nortonrosefulbright.com

*Counsel for Defendant Zhuhai CosMX Battery
Co., Ltd.*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  Plaintiff/Counter-Defendant's counsel of record was served with a true and correct copy of the foregoing document by the CM/ECF system on February 3, 2023.

/s/ Charles B. Walker, Jr.