## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| **NINGDE AMPEREX TECHNOLOGY LIMITED,** | § § § | |
| | § | **Case No. 2:22-cv-00232-JRG** |
| **Plaintiff,** | § | |
| **v.** | § | **Honorable Judge Gilstrap** |
| | § | |
| **ZHUHAI COSMX BATTERY CO., LTD.,** | § § | **JURY TRIAL DEMANDED** |
| | § | |
| **Defendant.** | § | |

### DEFENDANT ZHUHAI COSMX BATTERY CO. LTD.'S SECOND AMENDED ANSWER AND COUNTERCLAIMS TO PLAINTIFF NINGDE AMPEREX TECHNOLOGY LIMITED'S FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Defendant Zhuhai CosMX Battery Co., Ltd. ("Defendant" or "CosMX") amends its Answer, Affirmative Defenses, and Counterclaims to Plaintiff Ningde Amperex Technology, Ltd.'s ("Plaintiff" or "ATL") First Amended Complaint (the "FAC").

### NATURE OF THE ACTION

1.      CosMX admits that ATL asserts U.S. Patent No. 10,971,706 (the "'706 patent"), U.S. Patent No. 11,329,352 (the "'352 Patent"), U.S. Patent No. 10,833,363 (the "'363 Patent"), and U.S. Patent No. 10,964,987 (the "'987 Patent") in the FAC. CosMX denies the remaining allegations in paragraph 1 of the FAC.

### THE PARTIES

2.      CosMX is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 2 of the FAC and therefore denies them.

3.      CosMX is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 3 of the FAC and therefore denies them.

4.      CosMX is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 4 of the FAC and therefore denies them.

5.      CosMX is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 5 of the FAC and therefore denies them.

6.      CosMX is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 6 of the FAC and therefore denies them.

7.      CosMX admits the allegations in paragraph 7 of the FAC.

## JURISDICTION AND VENUE

8.      CosMX admits the allegations in paragraph 8 of the FAC.

9.      CosMX admits the allegations in paragraph 9 of the FAC.

10.     CosMX denies the allegations in paragraph 10 of the FAC.

11.     CosMX admits that it designs, manufactures, sells, and markets components of rechargeable lithium ion batteries used in consumer electronics. Only the battery cells of the Accused Products are designed, developed and manufactured by CosMX in China. After the battery cells are manufactured, they are sold and shipped to packing companies in China that assemble the battery cells. The packing companies then sell and ship assembled batteries to contract manufacturers of brand companies. Most contract manufacturers are located in China. The contract manufacturers then assemble the final consumer products, sell them to the brand companies and ship the assembled consumer products to destinations according to the brand customer's instructions. CosMX denies the remaining allegations in paragraph 11 of the FAC.

12.     CosMX admits the allegations in paragraph 12 of the FAC.

13.     CosMX admits that it has a customer support location in Sunnyvale, CA. CosMX denies the remaining allegations in paragraph 13 of the FAC.

14.    CosMX admits that Exhibit C to the FAC includes the quotations in paragraph 18. CosMX denies the remaining allegations in paragraph 14 of the FAC.

15.    CosMX admits the allegations in paragraph 15 of the FAC.

16.    CosMX admits that it designs, manufactures, sells, and markets components of rechargeable lithium ion batteries used in consumer electronics. CosMX denies the remaining allegations in paragraph 16 of the FAC.

17.    In general, a brand customer is an indirect customer in that CosMX entered into a general commercial agreement with a brand customer to become a qualified vendor, and all subsequent commercial transactions have been between CosMX and other qualified vendors of the brand customer. As such, CosMX does not receive purchase orders from any brand customer, nor does CosMX directly offer any product for sale to the brand customer. Therefore, CosMX denies the allegations in paragraph 17 of the FAC.

18.    CosMX denies the allegations in paragraph 18 of the FAC.

19.    CosMX is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 19 of the FAC and therefore denies them.

20.    CosMX is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 20 of the FAC and therefore denies them.

21.    CosMX denies the allegations in paragraph 21 of the FAC.

**ATL'S ASSERTED PATENTS**

22.    CosMX admits that the '706 Patent issued on April 6, 2021, is titled "Electrode assembly," and names Jing Jiang and Kefei Wang as inventors. CosMX denies the remaining allegations in paragraph 22.

23.    CosMX is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 23 of the FAC and therefore denies them.

24.    CosMX admits that the '352 Patent issued on May 10, 2022, is titled "Secondary battery cell and winding formation system thereof," and names Peipei Guo, Yi Zhao, Ping He, Hongxin Fang, and Wenqiang Cheng as inventors. CosMX denies the remaining allegations in paragraph 24.

25.    CosMX is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 25 of the FAC and therefore denies them.

26.    CosMX admits that the '363 Patent issued on November 10, 2020, is titled "Electrolyte and electrochemical device," and names Kefei Wang, Qiao Zeng, Liangzhen Xiao, and Fei Wu as inventors. CosMX denies the remaining allegations in paragraph 26.

27.    CosMX is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 27 of the FAC and therefore denies them.

28.    CosMX admits that the '987 Patent issued on March 30, 2021, is titled "Separator and energy storage device," and names Jianjian Yi, Xinzhi Zhang, Zengbin Wei, and Xinghua Tao as inventors. CosMX denies the remaining allegations in paragraph 28.

29.    CosMX is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 29 of the FAC and therefore denies them.

30.    CosMX is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 30 of the FAC and therefore denies them.

31.    CosMX denies the allegations in paragraph 31 of the FAC.

## COUNT 1

### Infringement of the '706 Patent

32.    CosMX incorporates its responses to paragraphs 1 through 31 of the FAC as if fully set forth herein.

33.     CosMX is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 33 of the FAC and therefore denies them.

34.     CosMX denies the allegations in paragraph 34 of the FAC.

35.     Only the battery cells of the Accused Products are designed, developed and manufactured by CosMX in China. After the battery cells are manufactured, they are sold and shipped to packing companies in China that assemble the battery cells. The packing companies then sell and ship assembled batteries to contract manufacturers of brand companies. Most contract manufacturers are located in China. The contract manufacturers then assemble the final consumer products, sell them to the brand companies and ship the assembled consumer products to destinations according to the brand customer's instructions. Therefore, CosMX denies the allegations in paragraph 35 of the FAC.

36.     CosMX admits that it received a letter from ATL dated June 24, 2021. CosMX denies the remaining allegations in paragraph 36 of the FAC.

37.     CosMX denies the allegations in paragraph 37 of the FAC.

38.     CosMX denies the allegations in paragraph 38 of the FAC.

39.     CosMX denies the allegations in paragraph 39 of the FAC.

40.     CosMX denies the allegations in paragraph 40 of the FAC.

41.     CosMX denies the allegations in paragraph 41 of the FAC.

42.     CosMX denies the allegations in paragraph 42 of the FAC.

43.     CosMX denies the allegations in paragraph 43 of the FAC.

44.     CosMX admits that it received a letter from ATL dated June 21, 2022. CosMX denies the remaining allegations in paragraph 44 of the FAC.

45.     CosMX denies the allegations in paragraph 45 of the FAC.

## COUNT 2

### Infringement of the '352 Patent

46.    CosMX incorporates its responses to paragraphs 1 through 45 of the FAC as if fully set forth herein.

47.    CosMX is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 47 of the FAC and therefore denies them.

48.    CosMX denies the allegations in paragraph 48 of the FAC.

49.    Only the battery cells of the Accused Products are designed, developed and manufactured by CosMX in China. After the battery cells are manufactured, they are sold and shipped to packing companies in China that assemble the battery cells. The packing companies then sell and ship assembled batteries to contract manufacturers of brand companies. Most contract manufacturers are located in China. The contract manufacturers then assemble the final consumer products, sell them to the brand companies and ship the assembled consumer products to destinations according to the brand customer's instructions. Therefore, CosMX denies the allegations in paragraph 49 of the FAC.

50.    CosMX admits that it received a letter from ATL dated June 21, 2022. CosMX denies the remaining allegations in paragraph 50 of the FAC.

51.    CosMX denies the allegations in paragraph 51 of the FAC.

52.    CosMX denies the allegations in paragraph 52 of the FAC.

53.    CosMX denies the allegations in paragraph 53 of the FAC.

54.    CosMX denies the allegations in paragraph 54 of the FAC.

55.    CosMX denies the allegations in paragraph 55 of the FAC.

56.    CosMX denies the allegations in paragraph 56 of the FAC.

57.    CosMX denies the allegations in paragraph 57 of the FAC.

58.     CosMX admits that it received a letter from ATL dated June 21, 2022. CosMX denies the remaining allegations in paragraph 58 of the FAC.

59.     CosMX denies the allegations in paragraph 59 of the FAC.

## COUNT 3

## Infringement of the '363 Patent

60.     CosMX incorporates its responses to paragraphs 1 through 59 of the FAC as if fully set forth herein.

61.     CosMX is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 61 of the FAC and therefore denies them.

62.     CosMX denies the allegations in paragraph 62 of the FAC.

63.     Only the battery cells of the Accused Products are designed, developed and manufactured by CosMX in China. After the battery cells are manufactured, they are sold and shipped to packing companies in China that assemble the battery cells. The packing companies then sell and ship assembled batteries to contract manufacturers of brand companies. Most contract manufacturers are located in China. The contract manufacturers then assemble the final consumer products, sell them to the brand companies and ship the assembled consumer products to destinations according to the brand customer's instructions. Therefore, CosMX denies the allegations in paragraph 63 of the FAC.

64.     CosMX admits that it received a letter from ATL dated August 2, 2022. CosMX denies the remaining allegations in paragraph 64 of the FAC.

65.     CosMX denies the allegations in paragraph 65 of the FAC.

66.     CosMX denies the allegations in paragraph 66 of the FAC.

67.     CosMX denies the allegations in paragraph 67 of the FAC.

68.     CosMX denies the allegations in paragraph 68 of the FAC.

69.     CosMX denies the allegations in paragraph 69 of the FAC.

70.     CosMX denies the allegations in paragraph 70 of the FAC.

71.     CosMX denies the allegations in paragraph 71 of the FAC.

72.     CosMX admits that it received a letter from ATL dated August 2, 2022. CosMX denies the remaining allegations in paragraph 72 of the FAC.

73.     CosMX denies the allegations in paragraph 73 of the FAC.

## COUNT 4

### Infringement of the '987 Patent

74.     CosMX incorporates its responses to paragraphs 1 through 73 of the FAC as if fully set forth herein.

75.     CosMX is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 75 of the FAC and therefore denies them.

76.     CosMX denies the allegations in paragraph 76 of the FAC.

77.     Only the battery cells of the Accused Products are designed, developed and manufactured by CosMX in China. After the battery cells are manufactured, they are sold and shipped to packing companies in China that assemble the battery cells. The packing companies then sell and ship assembled batteries to contract manufacturers of brand companies. Most contract manufacturers are located in China. The contract manufacturers then assemble the final consumer products, sell them to the brand companies and ship the assembled consumer products to destinations according to the brand customer's instructions. Therefore, CosMX denies the allegations in paragraph 77 of the FAC.

78.     CosMX admits that it received a letter from ATL dated June 24, 2021. CosMX denies the remaining allegations in paragraph 78 of the FAC.

79.     CosMX denies the allegations in paragraph 79 of the FAC.

80.     CosMX denies the allegations in paragraph 80 of the FAC.

81.     CosMX denies the allegations in paragraph 81 of the FAC.

82.     CosMX denies the allegations in paragraph 82 of the FAC.

83.     CosMX denies the allegations in paragraph 83 of the FAC.

84.     CosMX denies the allegations in paragraph 84 of the FAC.

85.     CosMX denies the allegations in paragraph 85 of the FAC.

86.     CosMX admits that it received a letter from ATL dated June 24, 2021. CosMX denies the remaining allegations in paragraph 86 of the FAC.

87.     CosMX denies the allegations in paragraph 87 of the FAC.

## PRAYER FOR RELIEF

These paragraphs set forth the statement of relief requested by ATL, to which no response is required. CosMX denies all allegations and/or legal conclusions in these paragraphs, and specifically denies any wrongdoing or infringement, including without limitation, that the alleged infringement was willful. CosMX denies that any conduct on its part subjects it to any liability for damages or attorneys' fees under 35 U.S.C. §§ 284 or 285, and CosMX further denies that ATL is entitled to any relief whatsoever.

## DEFENDANT'S AFFIRMATIVE DEFENSES

CosMX incorporates by reference as if fully set forth herein its responses to Paragraphs 1–87 of the FAC. CosMX denies any allegations in the FAC not specifically admitted above. CosMX alleges and asserts the following defenses in response to the allegations of the FAC, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein. In addition to the affirmative defenses described below, subject to its responses above, CosMX specifically reserves all rights to allege additional affirmative defenses pursuant to any scheduling order or that may otherwise be lawfully asserted

in this action for any reason, including because those that become known through the course of discovery or further investigation.

## FIRST AFFIRMATIVE DEFENSE

ATL has failed to state a claim upon which relief may be granted because, *inter alia*, it has not alleged plausible allegations of infringement.

## SECOND AFFIRMATIVE DEFENSE

The claims of the '706, '352, '363, and '987 Patents are invalid for failure to comply with the requirements of Title 35, United States Code, including at least §§ 101, 102, 103, and/or 112.

## THIRD AFFIRMATIVE DEFENSE

CosMX has not infringed and does not infringe any valid and enforceable claim of the '706, '352, '363, and '987 Patents under any theory of infringement.

## FOURTH AFFIRMATIVE DEFENSE

ATL's claim for damages is limited by 35 U.S.C. § 286.

## FIFTH AFFIRMATIVE DEFENSE

ATL is barred in whole or in part from recovering damages under 35 U.S.C. § 287 to the extent ATL or its licensees have failed to provide proper notice of any alleged infringement.

## SIXTH AFFIRMATIVE DEFENSE

ATL is barred in whole or in part from recovering its costs under 35 U.S.C. § 288.

## SEVENTH AFFIRMATIVE DEFENSE

ATL's claims are barred by one or more of the doctrines of waiver, acquiescence, estoppel (including, without limitation, equitable estoppel and prosecution history estoppel), patent misuse, and unclean hands.

## EIGHTH AFFIRMATIVE DEFENSE

ATL is not entitled to injunctive relief. Among other things, ATL is not able to meet the standards for such relief as set forth in *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006).

## NINTH AFFIRMATIVE DEFENSE

The '363 Patent is unenforceable due to inequitable conduct during prosecution. As described below, one or more individuals who owed a duty of candor to the U.S. Patent and Trademark Office ("USPTO") during prosecution of the '363 Patent deliberately and knowingly withheld material information from the USPTO in connection with the prosecution of the application, in violation of their duty of candor to the USPTO as prescribed by 37 C.F.R. § 1.56. Further, the withholding was made with the specific intent to deceive the USPTO.

The '363 Patent is titled "Electrolyte and Electrochemical Device." Dkt. 8-7 (Exhibit G) at 1. The application that led to the '363 Patent was filed on December 6, 2018, as U.S. Patent Application No. 16/211,853, and claims priority to a foreign application filed on September 21, 2018, CN 2018 1 1108529. The '363 Patent issued on November 10, 2020.

Kefei Wang, Qiao Zeng, Liangzhen Xiao, and Fei Wu are the named inventors on the '363 Patent, and Plaintiff is the named assignee of the '363 Patent. *Id.*

Pursuant to 37 C.F.R. § 1.56, each individual associated with the filing and prosecution of the '363 Patent application—including the inventors, prosecuting attorneys, and their representatives—had a duty of candor and good faith in dealing with the USPTO, which includes a duty to disclose all information known to that individual to be material to patentability.

The individuals who had a duty under 37 C.F.R. § 1.56 were advised by USPTO rules and procedure to provide the USPTO with prior art that establishes, by itself or in combination with other information, a prima facie case of unpatentability.

On December 23, 2015, CN201510564696A was published as CN 105186036 (Tang '036) (Exhibit A), listing Plaintiff as Applicant, and on March 20, 2018, a Chinese patent was granted to Plaintiff.

Kefei Wang is listed as a named inventor on Tang '036.

On August 4, 2017, CN201610058323A was published as CN107017432 (Tang '432) (Exhibit B) published, listing Plaintiff as Applicant, and on February 22, 2019, a Chinese patent was granted to Plaintiff.

Tang '036 is prior art to the '363 Patent, at least because it was published more than a year before the earliest potential priority date that can be claimed for the '363 Patent.

Tang '432 is prior art to the '363 Patent, at least because it was published more than a year before the earliest potential priority date that can be claimed for the '363 Patent.

Tang '036 was and is material to the patentability of the subject matter claimed in the '363 Patent.

For example, Tang '036, alone or in combination with other prior art, at least renders obvious each limitation of independent claim 1 of the '363 Patent, as provided in Defendant's Invalidity Contentions served on January 19, 2023 (Exhibit C).

Exhibit C provides claim charts and specifically identified where each element of claims of the '363 Patent was taught or suggested by Tang '036. Exhibit C (Defendant's Invalidity Contentions) at Exhibit C.

Accordingly, Tang '036 is material to the patentability of at least one claim of the '363 Patent, as the USPTO would not have allowed one or more claims of the '363 Patent had it been aware of the undisclosed Tang '036.

Tang '432 was and is material to the patentability of the subject matter claimed in the '363 Patent.

For example, Tang '432, alone or in combination with other prior art, at least renders obvious each limitation of independent claim 1 of the '363 Patent, as provided in Defendant's Invalidity Contentions served on January 19, 2023.

Exhibit C provides claim charts and specifically identified where each element of claims of the '363 Patent was taught or suggested by Tang '432. Exhibit C (Defendant's Invalidity Contentions) at Exhibit C.

Accordingly, Tang '432 is material to the patentability of at least one claim of the '363 Patent, as the USPTO would not have allowed one or more claims of the '363 Patent had it been aware of the undisclosed Tang '432.

Upon information and belief, neither Tang '036 nor Tang '432 was ever disclosed to the USPTO during the prosecution that led to issuance of the '363 Patent. *See* Dkt. 8-7 (Exhibit G) at 1-2 ('363 Patent at 1) ("References Cited").

At least one of the named inventors was aware of Tang '036 and at least the Applicant—Plaintiff—was aware of Tang '036 and Tang '432 during prosecution of the '363 Patent. Kefei Wang is the first listed of the named inventors of the '363 Patent. Kefei Wang is also one of the named inventors on Tang '036. Plaintiff is the named Applicant of the '363 Patent and is also the named applicant of Tang '036 and Tang '432.

Upon information and belief, Kefei Wang, Plaintiff, or at least one other person with a duty of candor was aware of Tang '036, Tang '432, and/or the electrolyte solution work described in Tang '036 and Tang '432 and made a deliberate decision to withhold that material prior art with the specific intent to deceive the USPTO.

For example, Plaintiff was aware of Tang '036 and Tang '432 during prosecution of the '363 Patent as both published more than a year before the first utility application that led to issuance of the '363 Patent was originally filed in 2018. Upon information and belief, Plaintiff and/or Kefei Wang as Applicant and/or inventor, respectively, reviewed Tang '036 and Tang '432 before they were filed and as published, as well as reviewed this application that led to the '363 Patent in the time frame before it was filed. Upon information and belief, Plaintiff as applicant was made aware of the subject matter of Tang '036 and Tang '432 before or during the time frame that Tang '036 and Tang '432 published listing Plaintiff as the applicant. Thus, the applicant (Plaintiff) of the '363 Patent was aware of Tang '036 and Tang '432 at the time the application that led to the '363 Patent was filed.

Upon information and belief, Applicant intended to deceive the USPTO into issuing the '363 Patent by not disclosing its prior electrolyte solution work, including in particular the electrolyte solution technology described in Tang '036 and Tang '432.

Upon information and belief, Kefei Wang or another person with a duty of candor intended to deceive the USPTO into issuing the '363 Patent by not disclosing the prior electrolyte solution work for Plaintiff, including in particular the electrolyte solution technology described in Tang '036.

The subject matter described in Tang '036 and Tang '432 is in many respects identical to the claimed invention of the '363 Patent. The title of Tang '036 states that the subject matter described involves "Electrolyte solution and lithium-ion battery comprising electrolyte solution," the title of Tang '432 states that the subject matter described involves "Nonaqueous Electrolyte and Lithium-Ion Battery," and the '363 Patent states that the subject matter described involves "Electrolyte and Electrochemical Device." (Exhibit A (Tang '036 at 1)); Exhibit B (Tang '432 at

1)); Dkt. 8-7 Exhibit G ('363 Patent at 1). Tang '036 and/or Tang '432, either alone or in combination with other prior art, renders at least one claim of the '363 Patent invalid as described in Defendant's January 19, 2023 Invalidity Contentions. Exhibit C.

Upon information and belief, especially in view of the materiality of the electrolyte solution technology described and claimed in Tang '036 and Tang '432, and the fact that inventor Kefei Wang and Applicant (Plaintiff) did not disclose the prior electrolyte solution work to the USPTO, the most reasonable inference to be drawn from Applicant's and Kefei Wang's failure to disclose Tang '036 and/or Tang '432 to the USPTO is that Applicant and/or the inventor intended to deceive the USPTO into issuing the '363 Patent by not disclosing the prior electrolyte solution technology work that was previously disclosed in seeking patent protection in China.

Accordingly, the '363 Patent is unenforceable for inequitable conduct. The Applicant and inventors of the '363 Patent, including Plaintiff and at least Kefei Wang, had a duty of candor and good faith to the USPTO under 37 C.F.R. § 1.56. But, as described above, upon information and belief, Applicant (Plaintiff) and Kefei Wang failed to disclose Tang '036 and Tang '432—material, invalidating prior art—to the USPTO during prosecution of the '363 Patent and did so with specific intent to deceive the USPTO.

### TENTH AFFIRMATIVE DEFENSE

The '352 Patent is unenforceable due to inequitable conduct during prosecution. As described below, one or more individuals who owed a duty of candor to the USPTO during prosecution of the '352 Patent deliberately and knowingly withheld material information from the USPTO in connection with the prosecution of the application, in violation of their duty of candor to the USPTO as prescribed by 37 C.F.R. § 1.56. Further, the withholding was made with the specific intent to deceive the USPTO.

The '352 Patent is titled "SECONDARY BATTERY CELL AND WINDING FORMATION SYSTEM THEREOF." Dkt. 8-6 (Exhibit F) at 1. The application that led to the '352 Patent was filed on February 28, 2018, as U.S. Patent Application No. 15/908,327, and is a continuation of PCT/CN2015/088638, filed on August 31, 2015. The '352 Patent issued on May 10, 2022.

Peipei Guo, Yi Zhao, Ping He, Hongxin Fang, and Wenqiang Cheng are the named inventors on the '352 Patent, and Plaintiff is the named assignee of the '352 Patent. *Id.*

Pursuant to 37 C.F.R. § 1.56, each individual associated with the filing and prosecution of the '352 Patent application—including the inventors, prosecuting attorneys, and their representatives—had a duty of candor and good faith in dealing with the USPTO, which includes a duty to disclose all information known to that individual to be material to patentability.

The individuals who had a duty under 37 C.F.R. § 1.56 were advised by USPTO rules and procedure to provide the USPTO with prior art that establishes, by itself or in combination with other information, a prima facie case of unpatentability.

On November 19, 2014, 201410443798.7 published as CN 104157914 A (Wang) (Exhibit D).

Wang is prior art to the '352 Patent, at least because it was published before the earliest potential priority date that can be claimed for the '352 Patent.

Wang was and is material to the patentability of the subject matter claimed in the '352 Patent.

For example, Wang, alone or in combination with other prior art, at least renders obvious each limitation of independent claim 1 of the '352 Patent, as provided in Defendant's Invalidity Contentions served on January 19, 2023. Exhibit C.

Exhibit C provides claim charts and specifically identified where each element of claims of the '352 Patent was taught or suggested by Wang. Exhibit C at Exhibit B.

Accordingly, Wang is material to the patentability of at least one claim of the '352 Patent, as the USPTO would not have allowed one or more claims of the '352 Patent had it been aware of the undisclosed Wang.

Upon information and belief, Wang was never disclosed to the USPTO during the prosecution that led to issuance of the '352 Patent over a span of almost 7 years from the filing of PCT/CN2015/088638. *See* Dkt. 8-6 (Exhibit F) at 1-2 ('352 Patent at 1) ("References Cited").

Upon information and belief, at least one of the named inventors was aware of Wang during prosecution of the '352 Patent.

Upon information and belief, at least one of the inventors of the '352 Patent, Plaintiff, and/or another person with a duty of candor was aware of Wang and/or the electrode structure work described in Wang and made a deliberate decision to withhold that material prior art with the specific intent to deceive the USPTO.

For example, the inventors named in the '352 Patent were made aware of Wang and its subject matter during prosecution of the '352 Patent. The prosecution record for PCT/CN2015/081309 (Exhibit E), which published on December 15, 2016, as WO 2016/197382 Al (Exhibit F), indicates that an international search report (Exhibit G) and written opinion of the international searching authority (Exhibit H) dated March 16, 2016, became part of the record on December 15, 2016, and an international preliminary report on patentability (Exhibit I) became part of the record on December 12, 2017. The 2016 search report and written opinion and the 2017 report on patentability both identify Wang as prior art that renders one or more claims of the pending PCT patent application unpatentable. For example, Wang is identified as a "document of

particular relevance; the claimed invention cannot be considered novel or cannot be considered to involve an inventive step when the document is taken alone" in the 2016 search report. Exhibit G.

WO 2016/197382 Al (Exhibit F), lists the same five inventors as the named inventors of the '352 Patent, and lists Contemporary Amperex Technology Co., Limited as the applicant.

Upon information and belief, one or more of the named inventors of the '352 Patent, Plaintiff, and/or another person with a duty of candor were provided with a copy of, or made aware of the contents of, these search reports and the subject matter described in Wang between March 2016 and May 2022.

Plaintiff was aware of Wang during prosecution of the '352 Patent as Wang was published before the earliest potential priority date for the '352 Patent and was cited and discussed during prosecution of PCT/CN2015/081309 in 2016 and 2017, which listed the same inventors as the '352 Patent and another ATL entity, before the application that led to issuance of the '352 Patent was originally filed in 2018. Upon information and belief, Plaintiff and/or one or more inventors, respectively, reviewed Wang and/or the reports and written opinion discussing Wang and its subject matter during prosecution of the '352 Patent, as well as reviewed this application that led to the '352 Patent in the time frame before it was filed. Thus, the applicant of the '352 Patent (Plaintiff) and/or one or more inventors were aware of Wang at the time the application that led to the '352 Patent was filed in 2018 or before the '352 Patent issued in 2022.

Upon information and belief, one or more inventors, Applicant (Plaintiff), and/or another person with a duty of candor intended to deceive the USPTO into issuing the '352 Patent by not disclosing the prior electrode structure work disclosed in Wang.

The subject matter described in Wang is in many respects identical to the claimed invention of the '352 Patent. The title of Wang states that the subject matter described involves "HIGH-

POWER SOFT PACK LITHIUM-ION BATTERY AND MANUFACTURING TECHNIQUE THEREOF," and the '352 Patent states that the subject matter described involves "SECONDARY BATTERY CELL AND WINDING FORMATION SYSTEM THEREOF." Exhibit D (Wang) at 1; Dkt. 8-6 (Exhibit F) at 1. Wang, either alone or in combination with other prior art, renders at least one claim of the '352 Patent invalid as described in Defendant's January 19, 2023 Invalidity Contentions.

Upon information and belief, especially in view of the materiality of the electrode structure technology described and claimed in Wang, and the fact that inventors and Applicant (Plaintiff) did not disclose the prior electrode structure work in Wang to the USPTO despite having become aware of it during prosecution of a foreign application with identical inventorship by another ATL entity, the most reasonable inference to be drawn from Applicant's and the inventors' failure to disclose Wang to the USPTO is that Applicant and/or one or more of the inventors intended to deceive the USPTO into issuing the '352 Patent by not disclosing Wang that was prominently disclosed and discussed in seeking patent protection in foreign countries, including China.

Accordingly, the '352 Patent is unenforceable for inequitable conduct. The Applicant and inventors of the '352 Patent, including Plaintiff and at least one of the five named inventors, had a duty of candor and good faith to the USPTO under 37 C.F.R. § 1.56. But, as described above, upon information and belief, Applicant (Plaintiff) and all five named inventors failed to disclose Wang—material, invalidating prior art—to the USPTO during prosecution of the '352 Patent and did so with specific intent to deceive the USPTO.

## AMENDED COUNTERCLAIMS

Defendant Zhuhai CosMX Battery Co., Ltd. ("Counterclaim Defendant" or "CosMX") brings the following Counterclaims against Plaintiff and state as follows:

## THE PARTIES

1.      CosMX is a Chinese corporation with a principle place of business at No. 209, Zhufeng Road, Doumen, District, Zhuhai 519180, P.R. China.

2.      On information and belief, based on its pleadings in this action, ATL is a Chinese corporation with a principal place of business at No.1 Xingang Road, Zhangwan Town, Jiaocheng District, Ningde City, Fujian Province, P.R. China.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331, 1337(a), 1338(a), 1367, and 2201–02, as well as 15 U.S.C. §§ 15 and 26.An actual controversy exists between ATL and CosMX regarding the non-infringement and invalidity of U.S. Patent No. 10,971,706 (the "'706 patent"), U.S. Patent No. 11,329,352 (the "'352 Patent"), U.S. Patent No. 10,833,363 (the "'363 Patent"), and U.S. Patent No. 10,964,987 (the "'987 Patent") (collectively "the Asserted Patents").

4.      ATL has consented to the personal jurisdiction of this Court at least by commencing its action for patent infringement in this District under U.S. laws, as set forth in its FAC.

5.      By virtue of its filing this action, ATL also has consented that venue is permissible in this District pursuant to at least 28 U.S.C. §§ 1391(c) and 1400. By asserting these counterclaims, CosMX does not waive, and instead expressly preserves, any objection to venue with respect to the FAC in this action.

## BACKGROUND FACTS

### I.    ATL AND COSMX COMPETE IN PRODUCING LITHIUM-ION BATTERY CELLS

6.      ATL and CosMX manufacture consumer polymer lithium-ion battery cells that are used in a variety of electronic products.

7.      In particular, ATL and CosMX manufacture lithium-ion battery cells that are used in smartphones, and lithium-ion battery cells that are used in laptops.  ATL and CosMX compete for sales of such battery cells.

8.      ATL is the dominant manufacturer in each of these markets.  For instance, in 2021, ATL asserted that its smartphone batteries accounted for 60% to 70% of all batteries shipped, and third-party market analysis likewise confirms ATL controls in excess of 60% of the market for smartphone lithium-ion battery cells.  In addition, ATL has the largest share of any manufacturer in the market for lithium-ion batteries in laptops, with approximately 35% of that market.

9.      While CosMX has been successful in obtaining sales in the laptop battery market, ATL has engaged in a concerted effort to prevent CosMX from gaining a foothold in the smartphone battery market.

## II.      AS COSMX PREPARED TO GO PUBLIC, ATL UNDERTOOK A DELIBERATE EFFORT TO UNDERMINE AND HINDER COSMX'S ABILITY TO COMPETE

10.      On or about November 5, 2020, it was publicly announced that CosMX had submitted an application for an initial public offering on the Shanghai Stock Exchange of China. On June 17, 2021, the Shanghai Stock Exchange publicly announced that CosMX's IPO was being considered by the regulatory authority.

11.      Almost immediately following disclosure that CosMX's IPO was under consideration, ATL began a campaign to undermine CosMX's ability to compete in key markets by making a series of flawed and baseless patent infringement claims.

12.      On June 21, 2021, ATL sent CosMX a letter claiming patent infringement based on eight alleged Chinese patents.

13.      On June 24, 2021, ATL sent CosMX a second letter, this time claiming patent infringement based on three alleged U.S. patents.  In this second communication, counsel for ATL

in San Francisco, California, told CosMX that it was infringing on ATL's U.S. patents and threatened an injunction that would stop the importation into the U.S. of any products that incorporated CosMX technology, such as products made by Acer, HP, and Lenovo.

14.    Thereafter, ATL and CosMX engaged in a series of meetings and conferences to attempt to resolve the patent claims.  The parties met on or about July 14, 2021, July 28, 2021, August 12, 2021, September 3, 2021, and September 10, 2021.  At the meetings and conferences, a pattern developed.  CosMX would explain why the alleged patents were not infringed or were not valid.  In response, ATL would claim to have uncovered additional patents that had allegedly been infringed.  When CosMX refuted the new allegations, ATL responded with a new set of patents it claimed were infringed.

15.    Moreover, ATL sought to leverage its evolving patent allegations into a means to keep CosMX from competing in the market.  On information and belief, ATL reached out directly to several of CosMX's customers in an attempt to encourage those customers to no longer use CosMX's lithium-ion batteries.

16.    Moreover, ATL's patent litigation were conspicuously timed to key milestones of the financing process for CosMX.  For example, CosMX submitted its convertible debt financing application to the Chinese regulatory authority on or about May 17, 2022.  In June 2022, ATL responded by filing six patent suits in China and two patent suits in the U.S.  Similarly, on August 2, 2022, just days before the scheduled time at which CosMX's convertible debt financing application was to be considered by the Chinese regulatory authorities, ATL added two new patent infringement suits in the U.S.

III.  **ATL SOLICITS AN UNLAWFUL "NO-POACH" AGREEMENT FROM COSMX AND DEMANDS EXORBITANT LICENSING FEES TO RESOLVE ITS PATENT CLAIMS**

17.    Over the course of multiple meetings with ATL following ATL's claims of patent infringement, it became clear that ATL was interested in more than just its patent claims.   On at least three separate occasions, at meetings or conferences ostensibly focused on patent issues, ATL complained that CosMX was hiring ATL employees.  ATL's message to CosMX executives was that ATL would require CosMX to agree to a one-way no-hire agreement as part of any resolution of the patent claims.

18.    The agreement ATL demanded as part of resolving its global patent claims against CosMX constituted a *per se* violation of U.S. antitrust law.  CosMX refused to participate in ATL's unlawful scheme.

19.    Furthermore, ATL demanded exorbitant licensing fees for its patents, further indicating its desire to keep CosMX from competing in the relevant markets.

20.    Once CosMX realized that ATL did not intend to negotiate its alleged patent claims in good faith, CosMX refused to participate in ATL's unlawful scheme.

IV.  **RELEVANT MARKETS**

21.    There are two relevant product markets related to the manufacturing of lithium-ion batteries.   First, the market for sales of consumer polymer lithium-ion battery cells used in smartphones is a relevant product market (the "Smartphone Battery Market").  Second, the market for sales of consumer polymer lithium-ion battery cells used in laptops is a relevant product market (the "Laptop Battery Market").

22.    There are different relevant product markets for sales of lithium-ion battery cells based on the end-products that they battery cells are used for because lithium-ion battery cells are not reasonably interchangeable in use.

23.    Lithium-ion battery cells used in smartphones are not reasonably interchangeable with other lithium-ion battery cells because lithium-ion battery cells have unique product characteristics that preclude end-users from readily substituting one for the other.  For example, different end-use products have different certification requirements, such that a manufacturing process certified to manufacture lithium-ion battery cells for smartphones may not meet the certification requirements of a different manufacturer, for a different product.  In addition, the specifications of a battery vary based on the end-use product.  Laptop batteries, for example, require a high energy density system, use multiple cells connected in a series, and require high temperature battery technology.  Smartphone batteries, on the other hand, require fast charging system and do not use high temperature battery technology.

24.    The geographic market for the Smartphone Battery Market is world-wide.  The geographic market for the Laptop Battery Market is also world-wide.

25.    ATL has significant market and monopoly power in the relevant markets.  ATL boasts that it is "the world's leading lithium-ion battery manufacturer for smartphones and one of the major lithium-ion battery manufacturers for all consumer electronics."  ATL claims to have manufactured over one billion lithium-ion batteries per year for the past three years.

26.    In particular, ATL enjoys greater than 60% market share in the Smartphone Battery Market.  Indeed, according to published reports, Yang Liangxin, director of intellectual property of ATL stated at the Annual Chines Cell Phone Alliance Conference that ATL has a 60% to 70% share of the Smartphone Battery Market.  ATL also enjoys an approximately 35% market share of the Laptop Battery Market, which is the highest market share of any manufacturer in the market.

27.    Separately, there is also a relevant product market for innovation in lithium ion battery cells and the talent and labor necessary to produce innovations in the market for lithium-

ion batteries (the "Innovation Labor Market").  ATL concedes that it is "the world's leading producer and innovator of lithium-ion batteries." It has "thousands of patents in the United States and around the world." More importantly, there is a critical need for the supply of labor and talent in the market, who must be highly-trained and sophisticated to provide the know-how and necessary technical expertise that has fueled, and will continue to fuel, advancement in the manufacturing of lithium-ion battery cells.

28.    Individuals with the highly specialized technical knowledge and expertise characteristic of participants in the Innovation Labor Market are not reasonably interchangeable with individuals working outside the industry who lack that expertise.

29.    Moreover, the demand for employees in the Innovation Labor Market is high, and these employees are highly mobile.  Manufacturers such as ATL and CosMX recruit these employees globally.  As a result, the geographic market for the Innovation Labor Market is not limited to a single area. Instead, it is world-wide.  Alternatively, the geographic market for the Innovation Labor Market is coterminous with the nation of China.

30.    ATL controls a commensurately large share of the Innovation Labor Market as measured by ATL's share of the Smartphone Battery Market and the Laptop Battery Market. When combined with CosMX's share of those markets, the combined share of the Innovation Labor Market is estimated to exceed 60%.

31.    ATL's illegal no-poach agreement, if implemented, would have significantly impacted the Smartphone Battery Market, the Laptop Battery Market, and the Innovation Labor Market, by stifling innovation in the development of lithium-ion batteries, and harming the labor and talent that drives innovation.

32.    ATL's insistent on a no-poach agreement couple with its refusal to consider a license of smartphone patents and a demand for exorbitant licensing fees for licensing other allegedly infringed patents confirm ATL's desire to expand and maintain its monopoly power.  In particular, these anticompetitive acts were designed to erect a higher innovation barrier for a key competitor through the attempted extortion of a no-poach agreement in connection with negotiations ostensibly focused on resolution of a patent dispute.

## V.    HARM TO COMPETITION AND COSMX

33.    ATL's actions have harmed or pose a real and substantial, concrete threat to harm both competition generally and CosMX in particular.

34.    The ability to grow and succeed in the Smartphone Battery Market and the Laptop Battery Market is highly dependent on a business establishing itself at the technological forefront. As a result, demand for highly-skilled employees with the requisite technological expertise is, even in the absence of artificial restraints, fierce.

35.    In an effort to create and expand its monopoly power in the relevant markets, ATL has undertaken a deliberate scheme to coerce CosMX not to hire ATL's employees.  Such an agreement, often referred to as a no-hire or no-poach agreement, would be per se unlawful between competitors under the United States antitrust laws.

36.    The means by which ATL sought to coerce this unlawful agreement was the threat of this litigation to enforce its alleged patents.  In particular, ATL sought CosMX's agreement to a no-poach agreement on repeated occasions as part of its discussions of resolution of ATL's alleged claims of patent infringement.  ATL attempted to cloak its wrongdoing by demanding that CosMX sign a non-disclosure agreement, which ATL led CosMX to believe would be used to facilitate settlement negotiations.  Instead, ATL knowingly and purposefully used the non-disclosure agreement to attempt to conceal its solicitation of unlawful activity.

37.    CosMX's claim does not depend or turn on whether ATL's patents are valid or not, or have been infringed or not.  Solicitation of a per se unlawful agreement in an effort to create or expand monopoly power is not permissible, even if ATL could establish any of its patent claims (which, as pleaded above, it cannot).

38.    ATL's attempt to lock up its employees by preventing its strongest competitor from hiring those employees is blatantly anticompetitive.  It forecloses competition for one of the most important elements in producing lithium-ion batteries:  the technological skill and know-how that leads to innovation and product improvements.  Moreover, there are no procompetitive benefits that would arise from such an agreement.  Indeed, under U.S. antitrust law, such an agreement is considered per se unlawful.

39.    The fact that ATL followed through in pursuing this lawsuit when CosMX refused to agree to ATL's unlawful terms is a warning to other industry participants who may have been subject to a similar scheme, but may not have had the wherewithal to resist like CosMX. Indeed, ATL's conduct may have already caused a chilling effect on the hiring market in this specialized market.

40.    As a result of ATL's actions, competition in the Smartphone Battery Market, the Laptop Battery Market, and the Innovation Labor Market will likely decrease. Further, CosMX has incurred costs and legal fees responding to ATL's allegations prior to and in conjunction with the filing of this lawsuit as well as the multiplicity of proceedings ATL has filed in various jurisdictions around the world.  Moreover, CosMX is injured and continues to suffer injury by virtue of ATL's misuse of its patents by threatening enforcement actions as a means of coercing per se unlawful ends.

41.     Following CosMX's refusal to agree to ATL's no-poach demands to settle the patent infringement claims, ATL retaliated by filing this lawsuit in the Eastern District of Texas.

**COUNT ONE**

**DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '706 PATENT**

42.     CosMX restates and incorporates by reference the allegations in paragraphs 1–41 of its Counterclaims as if fully rewritten herein.

43.     An actual case or controversy exists between CosMX and ATL regarding the alleged infringement of the '706 Patent.

44.     CosMX has not infringed and does not infringe any claim of the '706 Patent under any theory of infringement. CosMX does not make, use, offer to sell, sell or import into the United States any product that practices any claim of the '706 Patent. Additionally, one or more limitations required by each claim is missing from the products made, used, sold, offered for sale and/or imported by the CosMX. As an example, the protective layer in CosMX's products does not have a binding sub-layer that is bound to a battery cell and therefore does not meet the requirement of all claims in the '706 Patent "wherein the protective layer comprises a first binding sub-layer and an isolation sub-layer which are laminated, and the protective layer is bound to the cell through the first binding sub-layer."

45.     A judicial declaration is necessary and appropriate so that CosMX may ascertain its rights regarding the '706 Patent. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., CosMX requests a declaration by the Court that it has not infringed, and does not infringe, any valid and enforceable claim of the '706 Patent.

## COUNT TWO

## DECLARATORY JUDGMENT OF INVALIDITY OF THE '706 PATENT

46.     CosMX restates and incorporates by reference the allegations in paragraphs 1–45 of its Counterclaims as if fully rewritten herein.

47.     An actual case or controversy exists between CosMX and ATL as to whether the claims of the '706 Patent are valid.

48.     The claims of the '706 Patent are invalid for failing to comply with one or more of the requirements for patentability set forth in 35 U.S.C. Sections 100 *et seq*. including §§ 101, 102, 103, and/or 112.

49.     U.S. Patent Publication No. 2017/0170524 to Zhu and U.S. 2012/0052295 to Iwata, alone or in combination, completely anticipate or render obvious the subject matter of claim 1 of the '706 patent, exactly as recited in the claim, rendering the claim invalid under 35 U.S.C. § 102 and/or § 103.

50.     A judicial declaration is necessary and appropriate so that CosMX may ascertain its rights as to whether the claims of the '706 Patent are valid. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Title 35 of the United States Code, CosMX requests a declaration by the Court that the claims of the '706 Patent are invalid for failing to satisfy the conditions for patentability specified in 35 U.S.C. § 101 *et seq.*, including, without limitation, §§ 101, 102, 103, and/or 112.

## COUNT THREE

## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '352 PATENT

51.     CosMX restates and incorporates by reference the allegations in paragraphs 1–50 of its Counterclaims as if fully rewritten herein.

52.     An actual case or controversy exists between CosMX and ATL regarding the alleged infringement of the '352 Patent.

53.     CosMX has not infringed and does not infringe any claim of the '352 Patent under any theory of infringement. CosMX does not make, use, offer to sell, sell or import into the United States any product that practices any claim of the '352 Patent. Additionally, one or more limitations required by each claim is missing from the products made, used, sold, offered for sale and/or imported by the CosMX. As an example, CosMX's products does not have a recess opposite an electrode and therefore does not meet the requirement of all claims in the '352 Patent "a first recess that is opposite to the first electrode tab receiving groove, defined by the corresponding portion of the second surface of the first current collector and the first active substance on a periphery of the first recess."

54.     A judicial declaration is necessary and appropriate so that CosMX may ascertain its rights regarding the '352 Patent. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., CosMX requests a declaration by the Court that it has not infringed, and does not infringe, any valid and enforceable claim of the '352 Patent.

**COUNT FOUR**

**DECLARATORY JUDGMENT OF INVALIDITY OF THE '352 PATENT**

55.     CosMX restates and incorporates by reference the allegations in paragraphs 1–54 of its Counterclaims as if fully rewritten herein.

56.     An actual case or controversy exists between CosMX and ATL as to whether the claims of the '352 Patent are valid.

57.     The claims of the '352 Patent are invalid for failing to comply with one or more of the requirements for patentability set forth in 35 U.S.C. Sections 100 *et seq*. including §§ 101, 102, 103, and/or 112.

58.    The combination of Chinese Patent Publication CN104157914 to Wang and U.S. Patent Publication 2014/0042121 to Zhang completely renders obvious the subject matter of claim 1 of the '352 patent, exactly as recited in the claim, rendering the claim invalid under 35 U.S.C. § 103.

59.    A judicial declaration is necessary and appropriate so that CosMX may ascertain its rights as to whether the claims of the '352 Patent are valid. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Title 35 of the United States Code, CosMX requests a declaration by the Court that the claims of the '352 Patent are invalid for failing to satisfy the conditions for patentability specified in 35 U.S.C. § 101 *et seq.*, including, without limitation, §§ 101, 102, 103, and/or 112.

## COUNT FIVE

## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '363 PATENT

60.    CosMX restates and incorporates by reference the allegations in paragraphs 1–59 of its Counterclaims as if fully rewritten herein.

61.    An actual case or controversy exists between CosMX and ATL regarding the alleged infringement of the '363 Patent.

62.    CosMX has not infringed and does not infringe any claim of the '363 Patent under any theory of infringement. CosMX does not make, use, offer to sell, sell or import into the United States any product that practices any claim of the '363 Patent. Additionally, one or more limitations required by each claim is missing from the products made, used, sold, offered for sale and/or imported by the CosMX. As an example, the weight percentage of dinitrile compound and the weight percentage of the trinitrile compound is less than 2 wt % in CosMX Products and therefore does not meet the requirement of all claims in the '363 Patent that "a weight percentage of the dinitrile compound is X and a weight percentage of the trinitrile compound is Y, where X and Y

meet conditions represented by Formula (1) and Formula (2): about 2 wt %≤(X+Y)≤about 11 wt %."

63.     A judicial declaration is necessary and appropriate so that CosMX may ascertain its rights regarding the '363 Patent. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., CosMX requests a declaration by the Court that it has not infringed, and does not infringe, any valid and enforceable claim of the '363 Patent.

## <u>COUNT SIX</u>

## <u>DECLARATORY JUDGMENT OF INVALIDITY OF THE '363 PATENT</u>

64.     CosMX restates and incorporates by reference the allegations in paragraphs 1–63 of its Counterclaims as if fully rewritten herein.

65.     An actual case or controversy exists between CosMX and ATL as to whether the claims of the '363 Patent are valid.

66.     The claims of the '363 Patent are invalid for failing to comply with one or more of the requirements for patentability set forth in 35 U.S.C. Sections 100 *et seq*. including §§ 101, 102, 103, and/or 112.

67.     U.S. Patent Publication No. 2017/0288268 to Kim or Chinese Patent Publication CN106848381 to Hong, alone or in combination, completely anticipate or render obvious the subject matter of claim 1 of the '363 patent, exactly as recited in the claim, rendering the claim invalid under 35 U.S.C. § 102 and/or § 103.

68.     A judicial declaration is necessary and appropriate so that CosMX may ascertain its rights as to whether the claims of the '363 Patent are valid. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Title 35 of the United States Code, CosMX requests a declaration by the Court that the claims of the '363 Patent are invalid for failing to satisfy the

conditions for patentability specified in 35 U.S.C. § 101 *et seq.*, including, without limitation, §§ 101, 102, 103, and/or 112.

## COUNT SEVEN

## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '987 PATENT

69.    CosMX restates and incorporates by reference the allegations in paragraphs 1–68 of its Counterclaims as if fully rewritten herein.

70.    An actual case or controversy exists between CosMX and ATL regarding the alleged infringement of the '987 Patent.

71.    CosMX has not infringed and does not infringe any claim of the '987 Patent under any theory of infringement. CosMX does not make, use, offer to sell, sell or import into the United States any product that practices any claim of the '987 Patent. Additionally, one or more limitations required by each claim is missing from the products made, used, sold, offered for sale and/or imported by the CosMX. As an example, the CosMX Products do not include a porous layer and therefore do not meet the requirement of every claim of the '987 Patent that require "a porous layer arranged on a surface of the porous substrate."

72.    A judicial declaration is necessary and appropriate so that CosMX may ascertain its rights regarding the '987 Patent. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, CosMX requests a declaration by the Court that it has not infringed, and does not infringe, any valid and enforceable claim of the '987 Patent.

## COUNT EIGHT

## DECLARATORY JUDGMENT OF INVALIDITY OF THE '987 PATENT

73.    CosMX restates and incorporates by reference the allegations in paragraphs 1–72 of its Counterclaims as if fully rewritten herein.

74.    An actual case or controversy exists between CosMX and ATL as to whether the claims of the '987 Patent are valid.

75.    The claims of the '987 Patent are invalid for failing to comply with one or more of the requirements for patentability set forth in 35 U.S.C. Sections 100 *et seq.* including §§ 101, 102, 103, and/or 112.

76.    U.S. Patent Publication No. 2011/0052987 to Katayama and U.S. 2020/0058916 to Schmitz, alone or in combination, completely anticipate or render obvious the subject matter of claim 1 of the '987 patent, exactly as recited in the claim, rendering the claim invalid under 35 U.S.C. § 102 and/or § 103.

77.    A judicial declaration is necessary and appropriate so that CosMX may ascertain its rights as to whether the claims of the '987 Patent are valid. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Title 35 of the United States Code, CosMX requests a declaration by the Court that the claims of the '987 Patent are invalid for failing to satisfy the conditions for patentability specified in 35 U.S.C. § 101 *et seq.*, including, without limitation, §§ 101, 102, 103, and/or 112.

## COUNT NINE

## SHERMAN ACT SECTION 2 – ATTEMPTED MONOPOLIZATION

78.    CosMX restates and incorporates by reference the allegations in paragraphs 1–77 of its Counterclaims as if fully rewritten herein.

79.    ATL has significant market power, controlling more than one-third of the market, in both the market for lithium-ion batteries used in smartphones and in the market for lithium-ion batteries used in laptops.  In particular, ATL is believed to possess in excess of 60% of the Smartphone Battery Market and approximately 35% of the Laptop Battery Market.

80.     In an effort to create and expand its monopoly power in these markets, ATL has undertaken the deliberate scheme described herein to coerce CosMX not to hire ATL's employees, a per se unlawful no-poach agreement under the United States antitrust laws.

81.     CosMX's claim does not depend or turn on whether ATL's patents are valid or not, or have been infringed or not.  Solicitation of a per se unlawful agreement in an effort to create or expand monopoly power is not permissible, even if ATL could establish any of its patent claims (which, as pleaded above, it cannot).

82.     In the alternative, CosMX additionally pleads that all of the patent claims asserted by ATL in this lawsuit are without merit, either because the patents are invalid or because CosMX's products do not infringe on ATL's patents.  CosMX's assertion of these patent claims was not in good faith because the purpose of the assertion was not to vindicate patent claims, but instead to coerce CosMX into agreeing not to hire ATL's  valuable employees.  The patent claims were used by ATL as a means to erect barriers to entry that would preserve and protect its market power, and provide it with substantial probability to achieve monopoly power in the relevant markets.

83.     ATL's anticompetitive actions were undertaken deliberately, with the specific intent to monopolize the relevant  markets.  Moreover, ATL's already-large market share gives it a dangerous probability of success, especially in a market with such high entry barriers where ATL and CosMX compete for a limited number of customers in a market of highly concentrated buyers.

84.     As a result of ATL's actions, competition in the relevant markets will likely decrease. Further, CosMX has been injured in its business and  property and it clearly has been threatened with loss or damage as well.  In particular, CosMX has incurred costs and legal fees responding to ATL's allegations prior to and in conjunction with the filing of this lawsuit and

related proceedings around the world.  Moreover, CosMX is injured and continues to suffer injury by virtue of ATL's misuse of its patents by threatening enforcement actions as a means of coercing per se unlawful ends.

85.    CosMX seeks damages and injunctive relief in connection with this claim.

## COUNT TEN

## SHERMAN ACT SECTION 2 – SOLICITATION OF CONSPIRACY TO MONOPOLIZE

86.    CosMX restates and incorporates by reference the allegations in paragraphs 1–85 of its Counterclaims as if fully rewritten herein.

87.    ATL's effort to coerce CosMX to agree to a no-poach agreement constitutes solicitation to participate in a conspiracy to jointly monopolize the market for highly skilled, technologically advanced labor services in the business of inventing and manufacturing lithium-ion battery cells.

88.    ATL and CosMX together enjoy over 60% of the market for highly skilled, technologically advanced labor services in the lithium-ion battery cell industry.  This combined market share means that, collectively, ATL and CosMX would have joint monopoly power in this market.

89.    ATL attempted to coerce CosMX into entering into this agreement by threatening patent litigation.  ATL threatened to sue CosMX for patent infringement unless CosMX agreed to conspire with ATL to monopolize the relevant labor market.  CosMX refused, and ATL filed this lawsuit, making good on its threat.

90.    The proposed no-poach agreement that ATL solicited would have been a per se violation of the antitrust laws and is blatantly anticompetitive.  Moreover, there are no procompetitive benefits that could or would arise from such an agreement.

91.    As a result of ATL's actions, competition in the consumer polymer lithium ion battery market will likely decrease. Further, CosMX has been injured in its business or property and faces the threat of future injury as well.  In particular, ATL's attempt to manipulate its patent claims into a basis for an anticompetitive conspiracy to monopolize poses an ongoing threat to CosMX.  CosMX seeks injunctive relief in connection with this claim.

## COUNT ELEVEN

## VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW
### (CAL. BUS. & PROF. CODE § 17200)

92.    CosMX restates and incorporates by reference the allegations in paragraphs 1–91 of its Counterclaims as if fully rewritten herein.

93.    ATL's effort to coerce CosMX through its California-based counsel to enter into a per se unlawful no-poach agreement constitutes an unfair business practice under California's unfair competition law.

94.    The misuse of ATL's patent claims (whether those claims are valid or not) to secure a patently unlawful, anticompetitive agreement, is an unfair business practice.

95.    As a result of ATL's actions, CosMX has suffered injury and/or the threat of injury. In particular, ATL's attempt to manipulate its patent claims into a basis for an anticompetitive conspiracy to monopolize poses an ongoing threat to CosMX.  Moreover, CosMX has suffered monetary loss in responding to ATL's purported patent claims, which were asserted only as a basis for securing the unlawful anticompetitive agreement.  CosMX also seeks injunctive relief in connection with this claim.

## COUNT TWELVE

## ATTEMPTED EXTORTION UNDER TEXAS THEFT LIABILITY ACT

96.    CosMX restates and incorporates allegations of paragraphs 1–95 and incorporates those allegations herein.

97.    ATL and its agents threatened CosMX with a patent infringement action unless CosMX entered into an unlawful agreement in violation of §134.002 of the Tex. Civ. Prac. & Rem. Code.

98.    By predicating its legal action, brought in the State of Texas, on CosMX's willingness to commit an unlawful act, ATL violated Texas law by attempting to extract value from CosMX that it had no right to.

99.    By predicating its legal action, brought in the State of Texas, on CosMX's unwillingness to commit an unlawful act, ATL specifically intended to deprive CosMX of value it was entitled to pursue.

100.    Because CosMX resisted ATL's extortive efforts and refused to participate in antitrust violations, ATL has pursued its claims against CosMX at great expense and harm to CosMX.

## COUNT THIRTEEN

## ATTEMPTED CIVIL EXTORTION UNDER CALIFORNIA LAW

101.    CosMX restates and incorporates the allegations of paragraphs 1–100 and incorporates those allegations herein.

102.    ATL expressly threatened CosMX with legal action based on alleged patent infringement unless CosMX agreed to enter into a plainly anticompetitive agreement, in violation of California's Unfair Competition Law (Bus. and Prof. Code §17200 *et seq.*) and California Penal Code §§524 & 9.

103.    ATL attempted to scare and coerce CosMX to enter an unlawful agreement that would have functionally deprived CosMX of its ability to compete with ATL to avoid patent infringement suits, in violation of California's Unfair Competition Law (Bus. and Prof. Code §17200 *et seq*.) and California Penal Code §§524 & 9.

104.    CosMX has a right to be free from ATL's coercion intended to induce CosMX to break antitrust laws.

105.    Because CosMX's refused to participate in antitrust violations, ATL has followed through on its threat to initiate legal action against CosMX, at great cost and expense to CosMX.

## COUNT FOURTEEN

## UNENFORCEABILITY OF '363 PATENT DUE TO INEQUITABLE CONDUCT

106.    CosMX restates and incorporates the allegations of paragraphs 1–105 and incorporates those allegations herein.

107.    CosMX realleges and incorporates by reference the Ninth Affirmative Defense of CosMX's Second Amended Answer, *supra*.

108.    An actual case or controversy exists between ATL and CosMX as to the unenforceability of the '363 Patent based on ATL having filed a Complaint against CosMX in this action and CosMX's Second Amended Answer and Affirmative Defenses above.

109.    The '363 Patent is unenforceable due to inequitable conduct during prosecution for the reasons discussed in the Ninth Affirmative Defense of CosMX's Second Amended Answer. For example, one or more individuals who owed a duty of candor to the USPTO during prosecution of the '363 Patent deliberately and knowingly withheld material information from the USPTO in connection with the prosecution of the application, in violation of their duty of candor to the USPTO as prescribed by 37 C.F.R. § 1.56. Further, the withholding was made with the specific intent to deceive the USPTO.

110.    Declaratory relief is both appropriate and necessary to establish that each of the claims of the '363 Patent is unenforceable due to this inequitable conduct before the USPTO.

111.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201 et seq., CosMX requests a declaration by the Court that each of the claims of the '363 Patent is unenforceable.

## COUNT FIFTEEN

## UNENFORCEABILITY OF '352 PATENT DUE TO INEQUITABLE CONDUCT

112.    CosMX restates and incorporates the allegations of paragraphs 1–111 and incorporates those allegations herein.

113.    CosMX realleges and incorporates by reference the Tenth Affirmative Defense of CosMX's Second Amended Answer, *supra*.

114.    An actual case or controversy exists between ATL and CosMX as to the unenforceability of the '352 Patent based on ATL having filed a Complaint against CosMX in this action and CosMX's Second Amended Answer and Affirmative Defenses above.

115.    The '352 Patent is unenforceable due to inequitable conduct during prosecution for the reasons discussed in the Tenth Affirmative Defense of CosMX's Second Amended Answer. For example, one or more individuals who owed a duty of candor to the USPTO during prosecution of the '352 Patent deliberately and knowingly withheld material information from the USPTO in connection with the prosecution of the application, in violation of their duty of candor to the USPTO as prescribed by 37 C.F.R. § 1.56. Further, the withholding was made with the specific intent to deceive the USPTO.

116.    Declaratory relief is both appropriate and necessary to establish that each of the claims of the '352 Patent is unenforceable due to this inequitable conduct before the USPTO.

117.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201 et seq., CosMX requests a declaration by the Court that each of the claims of the '352 Patent is unenforceable.

## PRAYER FOR RELIEF

WHEREFORE, CosMX respectfully requests that the Court enter a judgment in CosMX's favor against ATL and issue an order that includes:

a.    dismissal of ATL's FAC with prejudice;

b.    judgment against ATL and in favor of CosMX;

c.    a declaration that ATL take nothing by its FAC;

d.    a declaration that CosMX has not infringed any valid claims of the Asserted Patents under any theory of infringement;

e.    a declaration that the claims of each of the Asserted Patents is invalid;

f.    a declaration that the '363 Patent and '352 Patent and their related U.S. patents and applications are unenforceable due to inequitable conduct before the USPTO;

g.    an injunction precluding ATL from enforcing its patents in the United States;

h.    an award of actual compensatory damages arising out of ATL's anticompetitive conduct;

i.    an award of treble damages under the Sherman Act and all other applicable laws;

j.    an injunction precluding ATL from soliciting no-hire agreements from its competitors;

k.    a declaration that this case is exceptional and an award on the patent claims to CosMX of its reasonable costs and expenses of litigation, including attorneys' fees and expert witness fees;

l.    an award of reasonable attorney's fees and costs under the Sherman Act and all other applicable laws; and

m.    such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

CosMX demands a trial by jury for all issues so triable.

Dated: May 30, 2023

Respectfully submitted,

/s/ Eric H. Findlay
Charles B. Walker, Jr.
Texas Bar No. 00794808
Jaime Stark (*pro hac vice* forthcoming)
Texas Bar No. 24101163
NORTON ROSE FULBRIGHT US LLP
Fulbright Tower
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Tel: 713-651-5203
Fax: 713-651-5246
Email: charles.walker@nortonrosefulbright.com
Email: jaime.stark@nortonrosefulbright.com

Layne E. Kruse
Texas Bar No. 11742550
Darryl W. Anderson
Texas Bar No. 24008694
NORTON ROSE FULBRIGHT US LLP
Fulbright Tower
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Tel: 713-651-5203
Fax: 713-651-5246
Email: layne.kruse@nortonrosefulbright.com
Email: darryl.anderson@nortonrosefulbright.com

Eric Green
Texas Bar No. 24069824
Valerie K. Barker
Texas Bar No. 24087141
NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701-4255
Tel: 512-536-3073
Fax: 512-536-4598
Email: eric.green@nortonrosefulbright.com
Email: valerie.barker@nortonrosefulbright.com

Eric H. Findlay

Texas Bar No. 00789886
Findlay Craft, P.C.
7270 Crosswater Avenue, Suite B
Tyler, TX 75703
Tel: 903-534-1100
Fax: 903-534-1137
Email: efindlay@findlaycraft.com

*Counsel for Defendants* ZHUHAI COSMX BATTERY CO. LTD.

## CERTIFICATE OF SERVICE

I certify that on May 30, 2023, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

*/s/  Eric H. Findlay*
Eric H. Findlay

- 43 -